**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

DAVIDSON HENAO and MIGUEL MERO,    )
individually and on behalf of other similarly    )
situated persons,    )
   )
               Plaintiffs,    )
v.    )
   )
PART AUTHORITY, LLC,    )
PARTS AUTHORITY, INC.,    )
and NORTHEAST LOGISTICS,    )
INC. d/b/a "Diligent,"    )
   )
               Defendants.    )

---------------------------------------------------------------x

Case No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Davidson Henao and Miguel Mero, individually and on behalf of other similarly situated persons, state as follows for their Complaint against Defendants Parts Authority, LLC, Parts Authority Inc. and Northeast Logistics, Inc. d/b/a "Diligent:"

**PRELIMINARY STATEMENT**

1. Defendants Parts Authority, LLC and Parts Authority, Inc. (collectively "Parts Authority") together own and operate a chain of approximately 81 automobile parts sales and distribution stores in the States of New York, Arizona, California, Georgia, Maryland and New Jersey and in the territory of Washington DC, including automotive parts stores located in Westchester County and Bronx County, New York.

2. Each of Parts Authority's New York stores employs auto parts delivery drivers hired through Diligent, a staffing firm, who Parts Authority has misclassified as "independent contractors" (collectively "Delivery Drivers").

3. Pursuant to its policies and practices, Parts Authority has failed to pay overtime wages to the Delivery Drivers in violation of the New York Labor Law ("NYLL").

4.  Pursuant to its policies and practices, Parts Authority has failed to pay New York's minimum wage to its Delivery Drivers employed in New York in violation of the NYLL.

5.  Pursuant to its policies and practices, Parts Authority has failed to reimburse its Delivery Drivers for the cost of driving their own vehicles to deliver Parts Authority's auto parts to Parts Authority's customers, which causes their net wages to fall below, or to fall further below, the New York minimum wage (nominal wage rate – unreimbursed vehicle expenses = subminimum wage).

6.  Pursuant to its policies and practices, Parts Authority has failed to pay its Delivery Drivers employed in the State of New York "spread of hours" pay in violation of the NYLL.

7.  Pursuant to its policies and practices, Parts Authority has failed to furnish its Delivery Drivers employed in the State of New York wage notices in violation of the NYLL.

8.  Pursuant to its policies and practices, Parts Authority has failed to furnish its Delivery Drivers employed in the State of New York accurate wage statements in violation of the NYLL.

9.  The claims are asserted by Plaintiffs on behalf of all Parts Authority's Delivery Drivers who have worked for Parts Authority in the State of New York at any time within the last 6 years.

### JURISDICTION AND VENUE

10. The NYLL authorizes court actions by private parties to recover damages for violation of the NYLL's wage and hour provisions.  NYLL §§ 195 & 663(1).  Jurisdiction over the NYLL claims asserted herein is based on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

11. Venue in this district is proper under 28 U.S.C. § 1391(b) and (c) because Parts Authority resides in this District and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

12. Defendant Parts Authority, LLC is a Delaware limited liability company maintaining its principal place of business at 211-10 Hillside Avenue, Queens Village, New York, 11427, which is located in Queens County, New York.

13. Defendant Parts Authority, Inc. is a New York corporation which also maintains its principal place of business at 211-10 Hillside Avenue, Queens Village, New York, 11427, which is located in Queens County, New York.

14. Defendants Parts Authority, LLC and Parts Authority, Inc. comprise a "single employer" or "single integrated enterprise" as they share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control. Based on knowledge and information, Yaron Rosenthal ultimately owns a substantial interest in each of the Defendant entities, he served as the Chief Executive Officer ("CEO") and principal of both Defendant entities, and he has maintained ultimate control of all Parts Authority's business operations.  The approximately 81 Parts Authority stores are advertised as a single integrated enterprise on Parts Authority's website at www.partsauthority.com.

15. Alternatively and/or cumulatively, Defendants Parts Authority, LLC and Parts Authority, Inc. constitute "joint employers" with respect to the Delivery Drivers as they share authority to hire and fire Delivery Drivers, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise the employees.

16. Alternatively and/or cumulatively, because the work performed by the Delivery Drivers simultaneously benefited all Defendants Parts Authority, LLC and Parts Authority, Inc. and/or directly or indirectly furthered their joint interests, and because Defendants Parts Authority, LLC

and Parts Authority, Inc. are not completely disassociated with respect to the employment of the Delivery Drivers and may be deemed to share control of the Delivery Drivers, either directly or indirectly, by reason of the fact that Defendants Parts Authority, LLC and Parts Authority, Inc. either control, are controlled by, or are under common control with, the other, Defendants Parts Authority, LLC and Parts Authority, Inc. are collectively the "joint employers" of the Delivery Drivers under the NYLL's broad definition of "employer."   29 C.F.R. § 791.2(b) (using in determining "joint employment" under the NYLL).

17. Defendant Northeast Logistics, Inc. d/b/a "Diligent" ("Diligent") is a Texas corporation which, during all times relevant, served as Parts Authority's agent with respect to certain employment decisions.

18. Diligent is joined herein pursuant to Fed. R. Civ. P. 19 as complete relief cannot be accorded absent joinder of Diligent.

19. For about eight months in 2016, Plaintiff Davidson Henao was employed by Parts Authority as a delivery driver at its stores located at 8940 Metropolitan Avenue, Rego Park, New York, 11374 and 211-10 Hillside Avenue, Queens Village, New York, 11427.

20. For about six months in 2016, Plaintiff Miguel Mero was employed by Parts Authority as a delivery driver at its store located at 8940 Metropolitan Avenue, Rego Park, New York, 11374. Mr. Mero's job responsibilities for Parts Authority when performing the work at issue in this complaint included repeated deliveries to the Bronx.

PERTINENT FACTS

*Parts Authority's Business*

21. Parts Authority owns and operates a chain of approximately 81 vehicle parts sales and distribution stores in the States of New York, Arizona, California, Georgia, Maryland, and New

Jersey and in Washington DC, including stores located in Westchester County and Bronx County, New York.

22. The primary function of these stores is to sell automotive parts to Parts Authority's customers, whether customers purchase those parts in Parts Authority's stores or have the parts delivered.

23. Each of Parts Authority's stores employs Delivery Drivers.

24. Parts Authority's Delivery Drivers share the same primary job duty of delivering automotive parts to Parts Authority's customers using their personal automobiles.

***Parts Authority's Treatment of Delivery Drivers***

25. Parts Authority has similarly treated its Delivery Drivers as:

(a)     The Delivery Drivers have been economically dependent on Parts Authority;

(b)     Parts Authority has scheduled the Delivery Drivers to work full time or longer hours, thereby precluding the Delivery Drivers from earning substantial income from other sources or engaging in substantial independent business activities;

(c)     The Delivery Drivers' work assigned by Parts Authority has constituted an integral part of Parts Authority's automotive parts sales and delivery business and/or Parts Authority has assigned the Delivery Drivers to perform Parts Authority's core business activity of delivering automotive parts to Parts Authority's customers;

(d)     The Delivery Drivers do not exercise managerial skill which affects their opportunity for profit or loss;

(e)     The Delivery Drivers do not hold meaningful opportunity for profit or loss as part of their duties performed for Parts Authority;

(f)     Parts Authority has compensated the Delivery Drivers through daily or hourly wages such that each delivery driver earns the same amount during his or her employment period, regardless of job performance and such that each Delivery Driver has no opportunity to increase earnings based on entrepreneurial or business skills;

(g)     The Delivery Drivers have not hired other helpers or subordinates to assist them with delivering Parts Authority's automotive parts to its customers;

(h)     The Delivery Drivers do not solicit additional work for themselves from Parts Authority's customers or others;

(i)     The Delivery Drivers have not advertised their services as automotive parts delivery drivers;

(j)     The Delivery Drivers have not purchased or maintained inventories of automotive parts for sale or distribution to customers;

(k)     The Delivery Drivers have not rented, leased or purchased retail, warehousing or other commercial space to maintain inventories of automotive parts to deliver to customers;

(l)     The Delivery Drivers have not scheduled deliveries or managed time tables for delivery of automotive parts to Parts Authority's customers;

(m)     The Delivery Drivers have invested relatively small amounts in equipment and supplies needed to perform their duties for Parts Authority compared to the value of Parts Authority's investment in its own business, inventory, premises, operating systems, advertising, name recognition, goodwill, labor, overhead, etc.;

(n)     The Delivery Drivers' work does not encompass any special skill, and only requires ordinary ability to drive a vehicle and follow Parts Authority's instructions;

(o)     The Delivery Drivers' employments have typically lasted relatively long-term, such as Plaintiffs' service for Parts Authority lasting a six months or longer; and

(p)     Parts Authority maintains ability to exercise meaningful control, and do exercise meaningful control, over the Delivery Drivers, including, but not limited to:

    (i)     Parts Authority assigns the Delivery Drivers' work schedules;

    (ii)    Parts Authority assigns the beginning and ending times of the Delivery Drivers' shifts;

    (iii)   Parts Authority has required the Delivery Drivers to report to Parts Authority's facilities at the beginning of their scheduled shifts to obtain automotive parts for delivery and receive delivery assignments;

    (iv)    Parts Authority has assigned/dispatched all routes to the Delivery Drivers;

    (v)     Parts Authority has assigned/dispatched all deliveries to the Delivery Drivers;

    (vi)    Parts Authority has instructed the Delivery Drivers how to load automotive parts into their vehicles;

(vii)   Parts Authority monitored and supervised the work of the Delivery Drivers;

(viii)  Parts Authority warned the Delivery Drivers of discipline based on their performance and/or conduct, including, but not limited to, warning some of the Delivery Drivers of termination;

(ix)    Parts Authority disciplined some of the Delivery Drivers based on performance and/or conduct, including, but not limited to, terminating some of the Delivery Drivers;

(x)     Parts Authority instructed the Delivery Drivers not to talk on the telephone while in its facilities;

(xi)    Parts Authority required the Delivery Drivers to call its dispatchers to report their arrival at customers;

(xiii)  Parts Authority required the Delivery Drivers to obtain signatures of Parts Authority's customers to verify deliveries of automotive parts; and

(xiv)   Parts Authority required the Delivery Drivers to ask its customers for returns and defective automotive parts.

***Parts Authority's Payment of Delivery Drivers***

26. Parts Authority typically required the Delivery Drivers to work in excess of 40 hours per week, and often required them to work more than 10 hours in one day.

27. For example, Parts Authority required Plaintiff Henao to work from 8:00 a.m. to about 7:00 p.m. Monday through Friday and from about 8:00 a.m. to 5:00 a.m. on Saturdays, or longer hours, without breaks.

28. Pursuant to its policy and practice, Parts Authority failed and refused to pay the Delivery Drivers overtime wages, equal to at least one and one-half times their regular wage rates, for work performed in excess of 40 hours per week.

29. Parts Authority typically failed and refused to pay Plaintiffs and other Delivery Drivers at least New York's minimum wage rate.

30. For example, in 2016, Parts Authority paid Plaintiff Henao $450.00 per week in cash while he typically worked at least 60 hours per week, which equates to $7.50 or less per hour ($450.00 / 60 hours = $7.50 per hour), which was less than the 2016 New York hourly minimum wage of $9.00 per hour, even before subtracting unreimbursed vehicle costs.

31. Upon information and belief, Parts Authority similarly failed and refused to pay numerous other Delivery Drivers at least New York's minimum wage.

32. Pursuant to its policy and practice, Parts Authority have refused to provide the Delivery Drivers "spread of hours" pay when they have worked in excess of 10 hours in one day.

*Under-Reimbursement of Delivery Drivers*

33. Parts Authority has required the Delivery Drivers to supply operable, legally-compliant and insured vehicles to deliver Parts Authority's automotive parts to its customers.

34. Parts Authority's Delivery Drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering automotive parts for the primary benefit of Parts Authority.

35. Pursuant to its policy and practice, Parts Authority has uniformly failed and refused to reimburse the Delivery Drivers for its vehicle costs incurred in performing their jobs for Parts Authority's benefit.

36. Parts Authority's conduct is tantamount to a highly unreasonable reimbursement of the Delivery Drivers' vehicle expenses incurred in performing their jobs.

37. During the longest applicable limitations period, the IRS business mileage reimbursement rate ranged between $.535 and $.58 per mile.

38. These publicly-available vehicle reimbursement rates represent a reasonable approximation of the average cost of operating a vehicle for use in delivering Parts Authority's automotive parts to its customers.

39. The driving conditions associated with a delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures, cause Delivery Drivers to experience lower gas mileage, higher maintenance costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a Delivery Driver.

40. Parts Authority's systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Parts Authority such that the wages Parts Authority's pay to the Delivery Drivers are not paid free and clear of all outstanding obligations to Parts Authority.

41. Parts Authority fails to reasonably approximate the amount of its Delivery Drivers' automobile expenses to such an extent that those Delivery Drivers' net wages are diminished beneath the New York minimum wage.

42. For example, Parts Authority paid Plaintiff Henao $450.00 per week, equating to a nominal hourly wage rate of about $7.50 or less ($450.00 per week / 60 or more = $7.50 per hour or less).

43. The New York minimum wage rate was $7.25 from July 24, 2009 through 2013, was $8.00 per hour in 2014, was $8.75 per hour in 2015, was $9.00 in 2016, was $9.75 per hour in 2017, was $10.40 per hour in 2018, and is $11.10 per hour in 2019.

44. Plaintiffs averaged approximately 600 delivery miles per week for Parts Authority.

45. During Plaintiffs' employments with Parts Authority, the IRS standard business mileage reimbursement rate was $.54 per mile. This rate reasonably approximates the automobile expenses incurred in delivering automotive parts. Using the IRS rate as a reasonable approximation of

Plaintiffs' automobile expenses, every mile driven on the job decreased their net wages by approximately $.54 ($.54 - $0.00 reimbursement).

46. Plaintiffs "kicked back" to Parts Authority approximately $324.00 on average per week (600 average miles per week x $.54 under-reimbursement per mile = $324.00 per week "kickback"), which equates to an hourly "kickback" of $5.40 ($324.00 weekly "kickback" / 60 hours = $5.40 per hour "kickback").

47. As an example, because Plaintiff Henao was paid about $7.50 per hour or less before deducting unreimbursed job expenses, the under-reimbursed vehicle expenses caused him to receive subminimum net wages of approximately $2.10 per hour (*e.g.,* $7.50 or less hourly wage nominally paid - $5.40 per hour kickback = $2.10 or less per hour subminimum net wage).

48. Based on information and belief, all of Parts Authority's Delivery Drivers had similar experiences to those of Plaintiffs.  They were subject to the same policy of failing to reimburse for vehicle costs incurred on the job, incurred similar automobile expenses, completed deliveries of similar distances and at similar frequencies, and were paid similar nominal wage rates before deducting unreimbursed business expenses.

49. Because Parts Authority paid the Delivery Drivers similar wage rates, and because the Delivery Drivers incurred unreimbursed automobile expenses, the Delivery Drivers "kicked back" to Parts Authority an amount sufficient to cause New York minimum wage violations during some or all workweeks.

***Parts Authority's Failure to Provide Wage Notices***

50.  Pursuant to its policy and practice, Parts Authority has failed and refused to furnish the Delivery Drivers with wage notices upon hiring and thereafter which list their rates of pay and bases thereof, whether they are paid by the hour, shift, day, week, salary, piece, commission, or

other; their hourly rates of pay and overtime rates of pay if applicable; Parts Authority's regular pay day; the name of any "doing business as" names used by Parts Authority; the physical address of Parts Authority's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

***Parts Authority's Failure to Provide Compliant Wage Statements***

51. Pursuant to its policy and practice, Parts Authority failed to provide the Delivery Drivers wage statements containing the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked including overtime hours worked if applicable; deductions; and net wages.

***Notice and Willfulness***

52. Parts Authority's failures, including but not necessarily limited to, its failures to pay overtime wages, low wage rates and lack of vehicle reimbursements, have been a frequent complaint of at least some of Parts Authority's Delivery Drivers, yet Parts Authority continued to fail and refuse to pay the Delivery Drivers overtime wages, minimum wages or vehicle cost reimbursements.

53. Parts Authority has been on notice of the above-alleged failures as they have been repeatedly sued in this District for the same, or very similar, violations; but Parts Authority has nevertheless failed and refused to correct such violations.

54. Alternatively or cumulatively, Parts Authority has been on notice of the above-alleged failures based on the public proliferation of similar claims lodged against pizza and food delivery companies since 2009; but Parts Authority has failed and refused to correct such violations.

55. Alternatively or cumulatively, Parts Authority has maintained the information needed to detect its own violations, but Parts Authority has failed and refused to correct such violations.

56. Parts Authority has acted without a good faith basis to believe that its underpayments of wages and other violations alleged herein have been in compliance with the law in that Parts Authority knowingly, deliberately and/or voluntarily disregarded its obligations to pay the Delivery Drivers overtime, minimum wages, vehicle reimbursements and "spread of hours pay;" and to provide compliant wage notices and wage statements.

*Net Impact*

57. The net impact of Parts Authority's policies and practices, instituted and approved by company managers, is that Parts Authority has acted without a good faith basis to believe that its underpayment of wages were in compliance with the law, in that Parts Authority (a) failed to pay the Delivery Drivers overtime in violation of New York law, (b) failed to pay the Delivery Drivers minimum wage in violation of New York law, (c) failed to reimburse the Delivery Drivers for automobile expenses to such an extent that Parts Authority further reduced their net wages below the New York minimum wage, (d) failed to provide the Delivery Drivers "spread of hours" pay; (e) failed to provide wage notices required under New York law, and (f) failed to provide wage statements required under New York law.

*Facts Relevant to Claim for Injunctive Relief*

58. Defendants' primary defense to its unlawful conduct has been to assert arbitration agreements.

59. Through a series of emails spanning from October 11, 2019 through October 18, 2019, the parties agreed to disclosure of Plaintiffs' clients' identities followed by tolling of applicable statutes of limitations while Defendants determine whether Plaintiffs' clients previously executed arbitration agreements.

60. The purpose of the parties' agreement was to avoid extra time, effort, and expense incurred in filing claims in the wrong forum.

61. Previously, Plaintiffs' counsel disclosed the named Plaintiffs' identities, and the identities of approximately 39 other claimants including Angel Santiago, to Defendants' counsel as part of the parties' agreement.

62. However, defense counsel has been unable to locate arbitration agreements signed by either of the named Plaintiffs.

63. Plaintiffs' counsel anticipate that they will soon amend this Complaint to add a collective action complaint under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

64. Angel Santiago is a delivery driver entitled to notice of an anticipated collective action, provided that the Court grants conditional certification.

65. Defendants have misused Plaintiffs' counsel's identification of their claims to circumvent Plaintiffs' counsel and mislead Mr. Santiago into believing that his claims were "settled."

66. On or about October 24, 2019, an individual identified as "Fernando" (last name currently unknown by Plaintiffs) from Diligent called Mr. Santiago directly.

67. First, Fernando offered Mr. Santiago $2,000.00 to settle his claims against Parts Authority and Diligent, which Mr. Santiago rejected.

68. Then, Fernando called Mr. Santiago back and offered him $4,000.00 to settle his claims against Parts Authority and Diligent.

69. Mr. Santiago accepted that offer by signing a document at Diligent's office located in New Jersey.

70. In exchange for signing that document, Fernando provided Mr. Santiago a $4,000.00 check.

71. There has been no court approval of the purported "settlement."

72. The U.S. Department of Labor did not supervise the purported "settlement."

73. When Fernando from Diligent called Mr. Santiago, Mr. Santiago thought that his attorneys were aware of Fernando's actions and that his attorneys had approved of Fernando contacting him directly.

74. No such approval was ever provided by Plaintiffs' counsel.

75. Mr. Santiago did not read Diligent's document before he signed it because he thought his attorneys had already reviewed and approved that document.

76. Diligent did not provide Mr. Santiago a copy of that document he signed.

77. Neither Fernando nor anyone else from Diligent or Parts Authority told Mr. Santiago that claims under the federal wage and hour law cannot be validly settled without court approval or supervision by the U.S. Department of Labor.

78. Neither Fernando nor anyone else told Mr. Santiago that any court refuses to approve settlements of federal wage and hour claims without review of settlements of New York wage and hour claims.

79. Defendants failed to explain to Mr. Santiago the possibility of liquidated damages and attorney fee recovery.

80. After speaking to his attorneys late on October 30, 2019, Mr. Santiago believed that Fernando both misled him into signing the documents and misled him about the value of his claims.

81. Plaintiffs' counsel were first advised of Defendants' conduct late on October 30, 2019. They promptly attempted to address this matter directly with Defendants' attorneys. Plaintiffs' counsel emailed defense counsel:

> The attached declaration verifies that Diligent directly paid Mr. Santiago $4,000.00 in an effort to settle his claims. However, Diligent cannot validly settle his FLSA claims without court approval or DOL supervision. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015). Moreover, Judge Levy has repeatedly rejected efforts to settle NYLL claims separately from FLSA claims. *See, e.g., Hotaranu v. Star Nissan Inc.,* 2018 U.S. Dist. LEXIS 34594 (E.D.N.Y. Feb. 27, 2018); *Gallardo v. PS Chicken Inc.,* 285 F.Supp.3d 549 (E.D.N.Y. Jan. 25, 2018); *Jones v. Smith,* 319 F.Supp.3d 619 (E.D.N.Y. May 14, 2018). In each of those cases, Judge Levy called such tactic an "end-run around *Cheeks*."

> We provided you notice of claims in good faith in an effort to save both sides time, effort and expense of having to address claims filed in the wrong forum. We did not provide you advance notice of those claims so that you can take advantage of the situation by attempting to directly settle with our clients or to circumvent us as counsel. This raises serious ethics concerns and undermines our trust in you.

> By this Monday at noon eastern time, please email us written assurance that you and your clients will immediately cease efforts to settle claims directly with our clients and your clients will stop circumventing us as counsel. Otherwise, we will seek an injunction.

82. In response, Defendants' attorney responded, "… be advised that I do not control the steps or actions Diligent has taken or contemplates taking in its efforts to protect its business."

83. On November 8, 2019, Plaintiffs' counsel emailed Defendants' attorneys a draft of their proposed memorandum of law in support of their application for a temporary restraining order, along with a second request for Defendants to cease their conduct. On November 15, 2019, Defendants' counsel substantively responded, stating that they "continue to see no basis for [Plaintiffs] to restrain Diligent from offering releases to former owner operators [aka delivery drivers] with whom it contracted."

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

84. Plaintiffs bring this claim as a class action under Fed. R. Civ. P. 23 on behalf of themselves and as the Class Representative of the following persons:

> All current and former Delivery Drivers employed by Parts Authority in the State of New York at any time since the date 6 years preceding the filing of this Complaint (hereinafter sometimes "the Class").

85. The claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

86. Plaintiffs' claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

87. The Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail and/or email.

88. Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Parts Authority's actions include, without limitation, the following:

(a)     Whether Parts Authority misclassified Class members as "independent contractors" exempt from the NYLL;

(b)     Whether Class members performed work integral to Parts Authority's business operations;

(c)     Whether Class members have had opportunity for profit or loss depending on managerial skill;

(d)     Whether the Class members' investment in the work was substantial compared to Parts Authority's investment in its business;

(e)     Whether the Class members' work has required special skills and initiative;

(f)     Whether the Class members' work was typically long term;

(g)     Whether Parts Authority exercised a substantial degree of control over the Class members' work;

(h)     Whether Parts Authority failed to pay Class members overtime wages in violation of the NYLL;

(i)     Whether Parts Authority failed to pay Class members minimum wages in violation of the NYLL;

(j)     Whether Parts Authority reasonably reimbursed Class members for their vehicle costs incurred in performing their duties for Parts Authority;

(k)     Whether Parts Authority failed to pay Class members net wages equal to at least the New York minimum wage after deduction of unreimbursed vehicle costs incurred on the job;

(l)     Whether Parts Authority made unlawful deductions from the Class members' wages in violation of the NYLL;

(m)     Whether Parts Authority failed to provide Class members wage notices in violation of the NYLL; and

(n)     Whether Parts Authority failed to provide Class members wage statements in violation of the NYLL.

89. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy,

efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

90. Plaintiffs' claims are typical of those of the Class in that:

    (a)    Plaintiffs and the Class have worked as Delivery Drivers for Parts Authority;

    (b)    Plaintiffs and the Class have performed similar job duties for Parts Authority;

    (c)    Plaintiffs and the Class have been subjected to the same, or at least very similar, treatment and control by Parts Authority as set forth in detail above;

    (d)    Parts Authority failed to pay Plaintiffs and the Class overtime wages;

    (e)    Parts Authority failed to pay Plaintiffs and the Class New York's minimum wage;

    (f)    Plaintiffs and the Class incurred vehicle costs in performing their duties for Parts Authority;

    (g)    Parts Authority failed to reimburse Plaintiffs and the Class for their vehicle costs incurred in performing their duties for Parts Authority;

    (h)    Parts Authority failed to provide Plaintiffs and the Class wage notices; and

    (i)    Parts Authority failed to provide Plaintiffs and the Class wage statements.

91. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Parts Authority has acted or refused to act on grounds generally applicable to the Class. The presentation of separate actions by individual Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Parts Authority, and/or substantially impairing or impeding the ability of Class members to protect their interests.

92. Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to

represent. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

93. Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all Class members.

## CLAIMS

### Count I:   Violation of the NYLL by Failing to Pay Overtime Wages

94. Plaintiffs reassert and re-allege the allegations set forth above.

95. At all times material herein, Plaintiffs and other similarly situated persons have been entitled to the rights, protections, and benefits provided under the NYLL, §§ 190 *et seq.* and 650 *et seq.*

96. The NYLL regulates, among other things, the payment of overtime wages to employees. NYLL §§ 650 *et seq.*; 12 NYCRR § 142-2.2.

97. Parts Authority is subject to the NYLL as they constitute an "employer" within the scope and meaning of the NYLL's broad definitions. NYLL §§ 651(6) & 190(3).

98. Plaintiffs and the Class are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definitions. NYLL §§ 651(5) & 190(2).

99. The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, despite Parts Authority's misclassification of the Delivery Drivers as

"independent contractors," none of the NYLL's exemptions apply to Plaintiffs or other Delivery Drivers. *Id.*

100. Pursuant to the NYLL, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. NYLL § 650 *et seq.*; 12 NYCRR § 142-2.2.

101. Parts Authority violated the NYLL by failing to pay for overtime wages as required by the NYLL.  NYLL § 650 *et seq.*; 12 NYCRR § 142-2.2.

102. Plaintiffs and the Class are victims of a uniform compensation policy. On information and belief, the same unlawful compensation policy has been applied to all Parts Authority's Delivery Drivers.

103. Plaintiffs and the Class are entitled to damages equal to the amount of the unpaid overtime wages during the 6 years preceding the filing of this Complaint, plus periods of equitable tolling. NYLL § 663(1).

104. Plaintiffs and the Class are entitled to an award of their costs incurred in pursuing this claim. *Id.*

105. Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees incurred in pursuing this claim. *Id.*

106. Plaintiffs and the Class are entitled to an award of prejudgment interest at the applicable legal rate. *Id.*

107. Parts Authority is presumptively liable for a penalty in the amount of 25% of the total amount of the unpaid minimum wages and/or overtime compensation due prior to April 9, 2011. *Id.*

108. Parts Authority is liable for a penalty in the amount of 100% of the total of the amount due from April 9, 2011 to present as Parts Authority cannot prove a good faith basis to believe that its underpayments were in compliance with the law.  NYLL § 663(1).

WHEREFORE, on Count I, Plaintiffs, on behalf of themselves and the Class, demand judgment against Parts Authority and request: (1) compensatory damages; (2) attorneys' fees and costs as allowed by NYLL § 663(1); (3) pre-judgment and post-judgment interest as provided by NYLL § 663(1); (4) penalty damages as provided during times relevant in NYLL §§ 198(1-a) and 663(1); and (5) such other relief as the Court deems fair and equitable.

### Count II:  Violation of the NYLL by Failing to Pay the New York Minimum Wage

109. Plaintiffs reassert and re-allege the allegations set forth above.

110. At all relevant times, Plaintiffs and the Class have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

11. The NYLL regulates, among other things, the payment of minimum wage by "employers" to "employees." NYLL § 652.

112. Parts Authority is subject to the NYLL as they are an "employer" within the scope and meaning of the NYLL's broad definitions.  NYLL §§ 651(6) & 190(3).

113. Plaintiffs and the Class are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definitions.  NYLL §§ 651(5) & 190(2).

114. The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, despite Parts Authority's misclassification of the Delivery Drivers as "independent contractors," none of the NYLL's exemptions apply to the Delivery Drivers. *Id.*

115. Under the NYLL, employees have been entitled to be compensated at a rate of at least $9.00 per hour during 2016.  NYLL § 652.

116. Plaintiffs and the Class are victims of a uniform compensation policy of compensating Delivery Drivers at wage rates below the New York minimum wage; and that uniform policy, in violation of the NYLL, has been applied, and continues to be applied, to all Parts Authority's Delivery Drivers.

117. As a result of the aforesaid violations of the NYLL's minimum wage provisions, Parts Authority has unlawfully denied Plaintiffs and the Class minimum wages guaranteed under the NYLL.

118. Plaintiffs and the Class are entitled to damages equal to the amount of the unpaid minimum wages during the 6 years preceding the filing of this Complaint, plus periods of equitable tolling. NYLL § 663(1).

119. Plaintiffs and the Class are entitled to an award of their costs incurred in pursuing this claim. *Id.*

120. Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees incurred in pursuing this claim. *Id.*

121. Plaintiffs and the Class are entitled to an award of prejudgment interest at the applicable legal rate. *Id.*

122. Parts Authority is liable for a penalty in the amount of 100% of the total of the amount due from April 9, 2011 to present as Parts Authority cannot prove a good faith basis to believe that its underpayments were in compliance with the law.  NYLL § 663(1).

WHEREFORE, on Count II, Plaintiffs, on behalf of themselves and the Class, demand judgment against Parts Authority and request: (1) compensatory damages; (2) attorneys' fees and costs as allowed by NYLL § 663(1); (3) pre-judgment and post-judgment interest as provided by

NYLL § 663(1); (4) penalty damages as provided during times relevant in NYLL §§ 198(1-a) and 663(1); and (5) such other relief as the Court deems fair and equitable.

**Count III:  Violation of the NYLL by Failing to Reasonably Reimburse Vehicle Expenses**

123. Plaintiffs reassert and re-allege the allegations set forth above.

124. At all relevant times, Plaintiffs and all other Delivery Drivers have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

125. The NYLL regulates, among other things, the payment of minimum wage by "employers" to "employees." NYLL § 652; 12 NYCRR § 142-2.1.

126. The NYLL also regulates, among other things, deductions from wages by "employers" to "employees." NYLL §§ 193 & 198-b.

127. Parts Authority is subject to the NYLL as they are an "employer" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(6) & 190(3).

128. Plaintiffs and Parts Authority's other Delivery Drivers are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(5) & 190(2).

129. The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, despite Parts Authority's misclassification of the Delivery Drivers, none of the NYLL's exemptions apply to Plaintiffs or Parts Authority's other Delivery Drivers. *Id.*

130. Under the NYLL, employees have been entitled to be compensated at a rate of at least $7.25 per hour between the beginning of the recovery period and 2013, $8.00 per hour in 2014, $8.75 in 2015, and $9.00 per hour in 2016.  NYLL § 652.

131. The NYLL prohibits employers, among other things, from requiring an employee to make payments by separate transaction, unless such charge or payment is permitted as a deduction from wages under the NYLL. NYLL §§ 193(1) & (b)(2).

132. The NYLL prohibits deductions from wages that are not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency and are not expressly authorized in writing by the employees and are not for the benefit of the employee. NYLL § 193(1) & (b)(2).

133. The NYLL prohibits persons, among other things, from requesting, demanding, or receiving, either before or after such employee is engaged, a return, donation, or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment. NYLL § 198-b(2).

134. As alleged herein, Parts Authority, pursuant to its policy and practice, have reimbursed its Delivery Drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes the Delivery Drivers' net wages below New York's minimum wage.

135. Alternatively, Parts Authority, pursuant to its policy and practice, violated the NYLL by requiring *de facto* deductions for vehicle expenses that are not authorized under the NYLL and/or that reduce Delivery Drivers' net wages below the minimum.

136. The Delivery Drivers are victims of uniform compensation and vehicle cost reimbursement policies; and these uniform policies, in violation of the NYLL, have been applied, and continue to be applied, to all Parts Authority's Delivery Drivers.

137. As a result of the aforesaid violations of the NYLL's minimum wage provisions, Parts Authority has unlawfully caused *de facto* deductions from the Delivery Drivers' wages that resulted in minimum wages being unlawfully withheld by Parts Authority from Plaintiffs and all other Delivery Drivers.

138. The Delivery Drivers are entitled to damages equal to the amount of the unpaid minimum wages during the 6 years preceding the filing of this Complaint, plus periods of equitable tolling. NYLL § 663(1).

139. Plaintiffs and all other Delivery Drivers are entitled to an award of their costs incurred in pursuing this claim. *Id.*

140. Plaintiffs and all other Delivery Drivers are entitled to an award of reasonable attorneys' fees incurred in pursuing this claim. *Id.*

141. Plaintiffs and all other Delivery Drivers are entitled to an award of prejudgment interest at the applicable legal rate. *Id.*

142. Parts Authority is liable for a penalty in the amount of 100% of the total of the amount due from April 9, 2011 to present as Parts Authority cannot prove a good faith basis to believe that its underpayments were in compliance with the law. NYLL § 663(1).

WHEREFORE, on Count III, Plaintiffs, on behalf of themselves and all other Delivery Drivers, demand judgment against Parts Authority and request: (1) compensatory damages; (2) attorneys' fees and costs as allowed by NYLL § 663(1); (3) pre-judgment and post-judgment interest as provided by NYLL § 663(1); (4) penalty damages as provided during times relevant in NYLL §§ 198(1-a) and 663(1); and (5) such other relief as the Court deems fair and equitable.

### Count IV: Violation of the NYLL by Failing to Provide Wage Notices

143. Plaintiffs reassert and re-allege the allegations set forth above.

144. At all relevant times, the Delivery Drivers have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

145. The NYLL regulates, among other things, provision of wage notices by "employers" to "employees."  NYLL §§ 195(1) & (2).

146. Parts Authority is subject to the NYLL as they are an "employer" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(6) & 190(3).

147. Plaintiffs and Parts Authority's other Delivery Drivers are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(5) & 190(2).

148. The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, despite Parts Authority's misclassification of the Delivery Drivers, none of the NYLL's exemptions apply to Plaintiffs or Parts Authority's other Delivery Drivers. *Id.*

149. The NYLL requires employers to provide their "employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."  NYLL § 195(1).

150. The NYLL further requires employers to notify their "employees in writing of any changes to the information set forth in [NYLL § 195(3)], at least seven calendar days prior to the time of such changes, unless such changes are reflected on the wage statement furnished in accordance with [NYLL § 195(3).]" NYLL § 195(2).

151. Parts Authority has failed to supply the Delivery Drivers with proper wage notices, as required by NYLL §§ 195(1) and (2), in English or in the language identified by the Class members as their primary language, containing their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL; the name of the employer; and "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

152. Through its failure to provide the Delivery Drivers with the wage notices required by the NYLL, Parts Authority violated NYLL §§ 195(1) and (2).

153. Due to Parts Authority's violations of NYLL §§ 195(1) and (2), the Delivery Drivers are entitled to $50.00 dollars each workday within the last 6 years that Parts Authority failed to provide them with wage notices, or a total of $500.00 each.  NYLL § 198(1-b).

154. The Delivery Drivers are entitled to an award of their costs incurred in pursuing this claim. *Id.*

155. The Delivery Drivers are entitled to an award of reasonable attorneys' fees incurred in pursuing this claim. *Id.*

WHEREFORE, on Count IV, Plaintiffs, on behalf of themselves and all other Delivery Drivers, demand judgment against Parts Authority and request (1) statutory damages pursuant to NYLL § 198(1-b); (2) attorneys' fees and costs as allowed by NYLL § 198(1-b); and (3) such other relief as the Court deems fair and equitable.

### Count V:  Violation of the NYLL by Failing to Provide Wage Statements

156. Plaintiffs reassert and re-allege the allegations set forth above.

157. At all relevant times, the Delivery Drivers have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

158. The NYLL regulates, among other things, provision of wage statements by "employers" to "employees."  NYLL § 195(3).

159. Parts Authority is subject to the NYLL as they are an "employer" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(6) & 190(3).

160. Plaintiffs and Parts Authority's other Delivery Drivers are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(5) & 190(2).

161. The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, despite Parts Authority's misclassification of the Delivery Drivers as "independent contractors," none of the NYLL's exemptions apply to Plaintiffs or Parts Authority's other Delivery Drivers. *Id.*

162. The NYLL requires employers to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages" and further requires that "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  NYLL § 195(3).

163. Parts Authority has failed to supply Plaintiffs and the Class with accurate statements of wages as required by NYLL § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked including overtime hours worked if applicable; deductions; and net wages.

164. Through their failure to provide the Delivery Drivers with the wage notices required by the NYLL, Parts Authority violated NYLL § 195(3).

165. Due to Parts Authority's violations of NYLL § 195(3), the Delivery Drivers are entitled to $250.00 dollars each workday within the last 6 years that Parts Authority failed to provide them with accurate wage statements, or a total of $5,000.00 each.  NYLL § 198(1-d).

166. The Delivery Drivers are entitled to an award of their costs incurred in pursuing this claim. *Id.*

167. The Delivery Drivers are entitled to an award of reasonable attorneys' fees incurred in pursuing this claim. *Id.*

WHEREFORE, on Count V, Plaintiffs, on behalf of themselves and all other Delivery Drivers, demand judgment against Parts Authority and request (1) statutory damages pursuant to NYLL § 198(1-d); (2) attorneys' fees and costs as allowed by NYLL § 198(1-d); and (3) such other relief as the Court deems fair and equitable.

**Count VI:** **Violation of the NYLL by Failing to Provide "Spread-of-Hours" Pay**

168. Plaintiffs reassert and re-allege the allegations set forth above.

169. At all relevant times, Plaintiffs and all other Delivery Drivers have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

170. Parts Authority is subject to the NYLL as they are an "employer" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(6) & 190(3).

171. Plaintiffs and Parts Authority's other Delivery Drivers are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(5) & 190(2).

172. The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, none of the NYLL's exemptions apply to Plaintiffs or Parts Authority's other Delivery Drivers.

173. The NYLL requires, among other things, "spread-of-hours" pay, in addition to the New York minimum wage, for any day in which spread of hours exceeds 10 hours.  12 NYCCR § 142-2.4.

174. Plaintiffs and the Class sometimes worked over 10 hours per workday.

175. Parts Authority has failed to pay Plaintiffs and the Class "spread of hours" pay for workdays encompassing more than 10 hours worked.

176. Plaintiffs and all other Delivery Drivers are entitled to one hour's pay at their basic minimum hourly wage rate for each day within the last 6 years in which they worked over 10 hours.  NYLL § 663(1); 12 NYCCR § 142-2.4.

177. Plaintiffs and all other Delivery Drivers are entitled to an award of their costs incurred in pursuing this claim. *Id*

178. Plaintiffs and all other Delivery Drivers are entitled to an award of reasonable attorneys' fees incurred in pursuing this claim. *Id.*

179. Plaintiffs and all other Delivery Drivers are entitled to an award of prejudgment interest at the applicable legal rate. *Id.*

180. Parts Authority is liable for a penalty in the amount of 100% of the total of the amount due from April 9, 2011 to present as Parts Authority cannot prove a good faith basis to believe that its underpayments were in compliance with the law. NYLL § 663(1).

WHEREFORE, on Count VI, Plaintiffs, on behalf of themselves and all other Delivery Drivers, demand judgment against Parts Authority and request: (1) compensatory damages; (2) attorneys' fees and costs as allowed by NYLL § 663(1); (3) pre-judgment and post-judgment interest as provided by NYLL § 663(1); (4) penalty damages as provided during times relevant in NYLL §§ 198(1-a) and 663(1); and (5) such other relief as the Court deems fair and equitable.

## COUNT VII:  INJUNCTIVE RELIEF

181. Plaintiffs reassert and re-allege the allegations set forth above.

182. Pursuant Fed. R. Civ. P. 23(d), injunctive relief should issue as Defendant has engaged in misleading and coercive conduct in an attempt to undermine Plaintiffs' class action claims and a soon-to-be-filed FLSA collective action including, but not necessarily limited to:

    a.  Defendants led Mr. Santiago to believe that he was entering into a valid settlement of his FLSA claims when a valid settlement of an FLSA claim requires court approval or supervision by the U.S. Department of Labor, which did not occur;

    b.  Defendants failed to explain that they were acting outside of the scope of communications or agreements between the parties' counsel;

    c.  Defendants failed to explain to Mr. Santiago that his counsel were unaware of Defendants' offers to him;

    d.  Defendants failed to explain that Mr. Santiago's counsel had not seen the document that Defendants required Mr. Santiago to sign to accept a "settlement;"

    e.  Defendants failed to explain to Mr. Santiago about liquidated damages; and

    f.  Defendants failed to explain to Mr. Santiago about attorney fee recovery.

183. Defendants' actions constitute misconduct of a serious nature warranting a injunctive relief.

184. Plaintiffs' counsel attempted to address this matter directly with Defendants' attorneys, but they denied any ability to influence their own clients' conduct.

WHEREFORE, on Count VII, Plaintiffs, on behalf of themselves and all other Delivery Drivers, demand injunctive relief Defendants from attempting to settle claims directly with any putative class or collective action member, requiring Defendants to issue corrective notice, and awarding Plaintiffs' attorney's fees and litigation costs incurred herein, and for such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Respectfully Submitted,

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: _____
Jeremiah Frei-Pearson
W. Scott Terrell III
Andrew C. White
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
sterrell@fbfglaw.com
awhite@fbfglaw.com

**WEINHAUS & POTASHNICK**
Mark Potashnick, MO Bar # 41315
(*pro hac vice* application forthcoming)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

**KELLER LENKNER LLC**
Ashley Keller
ack@kellerlenkner.com
(*pro hac vice* application forthcoming)
Marquel Reddish
mpr@kellerlenkner.com
(*pro hac vice* application forthcoming)
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5200
Warren Postman
(*pro hac vice* application forthcoming)
wdp@kellerlenkner.com
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Plaintiffs and the Putative Class*