UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVIDSON HENAO, MIGUEL MERO, OMOBOWALE AVOSEH, RASHEEM MARTIN, and SHAWN WILLIAMS, for themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> PARTS AUTHORITY, LLC, PARTS AUTHORITY, INC., YARON ROSENTHAL, NORTHEAST LOGISTICS, INC. d/b/a "Diligent Delivery Systems," ARIZONA LOGISTICS, INC. d/b/a "Diligent Delivery Systems," BBB LOGISTICS, INC. d/b/a "Diligent Delivery Systems," MICHIGAN LOGISTICS, INC. d/b/a "Diligent Delivery Systems," LARRY BROWNE, DOES 1-20 d/b/a "Diligent Delivery Systems," and DOES 21-40, <br><br> Defendants. | 19-cv-10720 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BBB LOGISTICS, INC., ARIZONA LOGISTICS, INC. AND LARRY BROWNE'S MOTION TO DISMISS**

DORF & NELSON LLP
555 Theodore Fremd Avenue
Rye, New York 10580
(914) 381-7600

*Attorneys for Defendants*
*Northeast Logistics, Inc., Arizona*
*Logistics, Inc., Michigan Logistics,*
*Inc., BBB Logistics, Inc. and Larry*
*Browne*

*Of Counsel:*
   Andrew P. Marks
   David S. Warner

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF PERTINENT FACTS ................................................................... 2

ARGUMENT ............................................................................................................. 4

   I.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST
      DEFENDANTS ALI, BBB AND BROWNE BECAUSE THE TAC IS A
      SHOTGUN PLEADING, BARREN OF THE FACTUAL SPECIFICITY
      REQUIRED TO SUPPORT THOSE CLAIMS ............................................... 4

        A.   PLAINTIFFS ALLEGE NO FACTS SPECIFIC TO ALI OR BBB ..................... 5

        B.   PLAINTIFFS' CLAIMS AGAINST BROWNE ARE NOT
            PLAUSIBLE ......................................................................... 10

   II.   THE COURT SHOULD DISMISS FOREIGN DEFENDANTS ALI, BBB
      AND BROWNE FOR LACK OF PERSONAL JURISDICTION ................................ 12

        A.   THERE IS NO GENERAL JURISDICTION OVER ALI OR BBB ................. 13

        B.   THERE IS NO SPECIFIC JURISDICTION OVER ALI OR BBB
            EITHER ............................................................................... 17

        C.   THERE IS NO PERSONAL JURISDICTION OVER BROWNE ..................... 18

   III.   PLAINTIFFS HAVE NOT SERVED BROWNE ......................................... 19

CONCLUSION ............................................................................................................. 19

## TABLE OF AUTHORITIES

Cases

*A.I. Trade Fin., Inc. v. Petra Bank,*
   989 F.2d 76 (2d Cir. 1993) ...................................................... 12

*Apolinar v. R.J. 49 REST., LLC,*
   2016 WL 2903278 (S.D.N.Y. May 18, 2016) ................................... 9, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................ 4, 5

*Attanasio v. Comm. Health Sys., Inc.,*
   2011 WL 5008363 (M.D. Pa. Oct. 20, 2011) ..................................... 6

*Austin v. Town of Farmington,*
   826 F.3d 622 (2d Cir. 2016) ....................................................... 5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................. 5

*Best Van Lines, Inc. v. Walker,*
   490 F.3d 239 (2d Cir. 2007) ...................................................... 17

*Bristol-Myers Squibb Co. v. Superior Court of Cal.,*
   137 S. Ct. 1773 (2017)................................................... 13, 14, 17

*Brown v. Lockheed Martin Corp.,*
   814 F.3d 619 (2d Cir. 2016) .................................................. 14, 15

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)............................................................. 17

*Carter v. Dutchess Comm'y College,*
   735 F.2d 8 (2d Cir. 1984) ........................................................ 10

*Cavallaro v. UMass Mem. Healthcare, Inc.,*
   678 F.3d 1 (1st Cir. 2012)......................................................... 6

*Continental Indus. Grp., Inc. v. Equate Petrochemical Co.,*
   586 F. App'x 768 (2d Cir. 2014)................................................... 17

*CutCo Indus., Inc. v. Naughton,*
   806 F.2d 361 (2d Cir. 1986) ...................................................... 17

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014).............................................................. 15

*Davis v. Abington Mem. Hosp.*,
   817 F.Supp.2d 556 (E.D. Pa. 2011) ........................................................ 6

*Denny v. Barber*,
   576 F.2d 465 (2d Cir. 1978) .................................................................... 12

*DiStefano v. Carozzi N. Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001) ..................................................................... 12

*Dong Chul Kim v. Harte Hanks, Inc.*,
   425 F. Supp. 3d 246 (S.D.N.Y. 2019) ....................................... 15, 16, 17

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................ 17

*Herman v. Blockbuster Entm't Grp.*,
   18 F. Supp. 2d 304 (S.D.N.Y. 1998) ......................................................... 8

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999) .................................................................... 10

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
   763 F.2d 55 (2d Cir. 1985) ...................................................................... 15

*Huang v. Shanghai City Corp.*,
   2020 WL 2319166 (S.D.N.Y. May 11, 2020) ....................................... 9, 16

*Irizarry v. Catsimatidis*,
   722 F.3d 99 (2d Cir. 2013) ...................................................................... 10

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
   77 N.Y.2d 28 (1990) ................................................................................ 15

*Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012) ........................................................ 12, 13, 15

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013) ...................................................................... 4

*Mareno v. Rowe*,
   910 F.2d 1043 (2d Cir. 1990) .................................................................. 14

*Morangelli v. Chemed Corp.*,
   922 F. Supp. 2d 278 (E.D.N.Y. 2013) ........................................................ 8

*Nakahata v. New York Presbyterian Healthcare Sys. Inc.*,
    723 F.3d 192 (2d Cir. 2013) ................................................................................ 5

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ................................................................................ 4

*Paylor v. Hartford Fire Ins. Co.*,
    748 F.3d 1117 (11th Cir. 2014) ........................................................................... 5

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997) .............................................................................. 14

*Perez v. DXC Tech. Serv. LLC,*
    2020 WL 1531363 (N.D. Cal. Mar. 31, 2020) ................................................... 6

*Pettenato v. Beacon Health Options, Inc.*,
    2019 WL 5587335 (S.D.N.Y. Oct. 25, 2019) ..................................................... 14

*Rodriguez v. Carrot Exp. Midtown LLC*,
    2019 WL 7293360 (S.D. Fla. Dec. 30, 2019) ..................................................... 5

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................... 18

*Tauza v. Susquehanna Coal Co.*,
    220 N.Y. 259 (1917) ............................................................................................ 15

*Tracy v. NVR, Inc.,*
    2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009) .................................................. 11

*Vasto v. Credico (USA) LLC*,
    2016 WL 4147241 (S.D.N.Y. Aug. 3, 2016) ...................................................... 11

Washington Mut. Bank v. Murphy,
    127 A.D.3d 1167 (2d Dep't 2015) ...................................................................... 19

*Weinreb v. Xerox Bus. Servs. LLC Health and Welfare Plan*,
    323 F.Supp.3d 501 (S.D.N.Y. 2018) .................................................................. 12

*Wolo Mfg. Corp. v. ABC Corp.*,
    348 F. Supp. 3d 176 (E.D.N.Y. 2018) ................................................................ 18

*Yeh v. Han Dynasty Inc.*,
    2019 WL 633355 (S.D.N.Y. Feb. 14, 2019) ....................................................... 16

Arizona Logistics, Inc. ("ALI"), BBB Logistics, Inc. ("BBB"), and Larry Browne submit this memorandum of law in support of their motion to dismiss the claims against them in the Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), (5) and (6).

## PRELIMINARY STATEMENT

The Third Amended Complaint ("TAC") is another shotgun pleading premised on sweeping allegations against undifferentiated defendants.  Plaintiffs' conclusory allegations are particularly evident in their claims against defendants ALI, BBB and Browne (collectively, the "Foreign Defendants") with whom they allege no contact or interactions at all.  Plaintiffs just lump the Foreign Defendants in with other defendants by labeling them joint employers and accusing them of being part of a single, integrated enterprise but without alleging specific facts that substantiate those conclusions.  It is not enough to merely invoke a doctrine and recite its elements.  Specific facts are needed to render the claims plausible and the TAC has none against the Foreign Defendants.[1]

The allegations against individual defendant Browne are insufficient, too.  Plaintiffs accuse him of having equity in the "Diligent" entities and being at the apex, but they allege no specific interactions or other contact with him – at all.  They do not accuse him of any direct involvement in their purported employment.  Instead, they claim he approved purported fees and policies but do *not* allege that any of those fees or policies applied to them.  In short, Plaintiffs' claims that Browne was

---

[1] Even though the Diligent defendants have no record of doing any business with any of the named plaintiffs (*see* Declaration of Camille Harvey in Support of Motion to Dismiss the Second Amended Complaint, sworn to on May 13, 2020 ("Harvey Decl.") (Dkt. No. 93), ¶ 10), the two "Diligent" entities that do business in New York, Northeast Logistics, Inc. ("NEL") and Michigan Logistics, Inc. ("MLI"), answered the TAC as did Parts Authority, Inc., Parts Authority, LLC and Yaron Rosenthal (*see* Dkt. Nos. 122, 124).  Those parties are engaged in discovery.

their "employer" under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") are not plausible and should be dismissed accordingly.

In addition, the Court lacks personal jurisdiction over the Foreign Defendants. All of them are in Texas and none is accused of doing anything in New York.[2] Plaintiffs cannot manufacture jurisdiction through conclusory allegations of joint employment and an integrated enterprise.

Plaintiffs also failed to properly serve a summons and complaint on defendant Browne. As a result, the Court should dismiss the claims against him, particularly in light of their implausibility.

As the TAC is Plaintiffs' fourth, failed attempt to plead viable claims, the Court should dismiss ALI, BBB and Browne with prejudice.

## THE ALLEGED FACTS PERTINENT TO THIS MOTION[3]

Parts Authority ("PA") owns and operates stores that sell auto parts.[4] (TAC, ¶ 1, 57) PA utilizes drivers to deliver auto parts to its customers "using their personal automobiles." (TAC, ¶ 60) Plaintiffs allege that these drivers are "hired through staffing agencies such as" ALI and BBB, among others, all of whom Plaintiffs label jointly as PA's "agent." (Id., ¶¶ 2, 34) Plaintiffs claim "Defendants routinely misclassify those delivery drivers hired through staffing agencies as 'independent contractors.'" (Id., ¶ 3) The TAC does not define the term "Defendants," but the caption includes six companies, two individuals and 40 "Doe" defendants.

Three of Plaintiffs contend they were "employed by Defendants as a delivery driver at Parts Authority's stores" in New York. (TAC, ¶¶ 52-54) Plaintiff Henao says he worked in

---

[2] ALI and BBB operate in Arizona and Georgia, respectively.

[3] The Foreign Defendants dispute the allegations in the TAC but assume, for purposes of this motion only, that the non-conclusory fact allegations and the undisputed jurisdictional allegations in it are true.

[4] PA is comprised of Parts Authority, LLC and Parts Authority, Inc. (TAC, ¶ 1) Parts Authority, LLC has its principal place of business in New York. (Id., ¶ 28) Parts Authority, Inc. was a New York corporation with a principal place of business in New York. (Id., ¶ 29)

Queens County "[f]or approximately eight months in 2016."  (*Id.*, ¶ 52)  Plaintiff Mero says he worked in Queens County "[f]or approximately six months in 2016."  (*Id.*, ¶ 53)  Plaintiff Martin says he worked in Bellport, New York, from June to December 2017.  (*Id.*, ¶ 54)

The other two Plaintiffs contend they were "employed by Defendants as a delivery driver at Parts Authority's stores" in Maryland and Washington, D.C.  Plaintiff Williams says he worked there from March 2014 to June 2019.  (TAC, ¶ 55)  Plaintiff Avoseh says he worked in Maryland only from December 2017 to June 2018.  (*Id.*, ¶ 56)

Plaintiffs assert no specific allegations against ALI or BBB, who, together with NEL and MLI, they label collectively as "Diligent."  (TAC, ¶ 2)  Plaintiffs claim all of them "do[] business as 'Diligent Delivery Systems,'" and "are commonly owned and operated Texas corporations" with a "primary place of business" in Texas.  (*Id.*, ¶ 34)  They contend that all four entities are "'a single employer' or 'single integrated enterprise' that share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control."  (*Id.*, ¶ 36)  Plaintiffs also contend "[a]lternatively and/or cumulatively" that all four, plus defendant Browne, "constitute 'joint employers' with respect to the delivery drivers as they share authority to hire and fire delivery drivers, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise the employees."  (*Id.*, ¶ 37)  They further aver that all four, plus defendant Browne, "either control, are controlled by, or are under common control with, the other…."  (*Id.*, ¶ 38)

NEL is the only Diligent-related entity that contracts with owner operators and refers them delivery engagement opportunities in New York.  (Harvey Decl. (Dkt. No. 93), ¶¶ 4-5)  MLI merely provides administrative and/or financial services to NEL and others.  (*Id.*, ¶ 2)

In contrast, ALI and BBB do not, and have not for at least six years, conducted business in New York, Maryland or the District of Columbia, for PA or otherwise.  (Harvey Decl., ¶ 9)

Larry Browne also resides in Texas.  Plaintiffs allege, "on knowledge and information," that he "ultimately owns a substantial interest in each of the Diligent Defendant entities" and served as their CEO and principal with "ultimate control of all Diligent's business operations." (TAC, ¶ 36)  They claim he "exercised operational control over all of the Diligent Delivery Service entities" and "oversaw and / or implemented the wage and hour policies and practices implicated in this action; [and] was ultimately responsible for the delivery drivers' wages and wage statements.…"  (*Id*., ¶ 35)  Plaintiffs accuse Browne generally of approving vehicle reimbursement, plus administrative and other fees that allegedly "reduced driver pay" (*id.*, ¶ 46), but do not allege that they ever paid any fees or were denied any reimbursements.  Plaintiffs also allege that Browne negotiated a contract with PA that placed "various restrictions on drivers" and required those drivers to "follow strict delivery procedures" (*id.*), but do not specifically allege that they were ever subject to any of those purported restrictions or procedures.

## ARGUMENT

I.   **THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST DEFENDANTS ALI, BBB AND BROWNE BECAUSE THE TAC IS A SHOTGUN PLEADING, BARREN OF THE FACTUAL SPECIFICITY REQUIRED TO SUPPORT THOSE CLAIMS**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is meant to test the legal sufficiency of the plaintiff's claims for relief.  *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 113 (2d Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) (*quoting Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  A complaint must assert more than labels and conclusions, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678.

## A.    PLAINTIFFS ALLEGE NO FACTS SPECIFIC TO ALI OR BBB

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  While the complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  *See Iqbal*, 556 U.S. at 678 (explaining that Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  "The failure to identify claims with sufficient clarity to enable a defendant to frame a responsive pleading constitutes a 'shotgun pleading' that violates Rule 8(a)(2)" and compels dismissal under Rule 12(b)(6).  *Rodriguez v. Carrot Exp. Midtown LLC,* 2019 WL 7293360 (S.D. Fla. Dec. 30, 2019).  *Accord Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014) ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e)(4) on the ground that the complaint provides it with insufficient notice to enable it to file an answer.").

Dismissal is particularly warranted when the plaintiffs assert joint employment claims but fail to factually distinguish the alleged joint employers.  *See Nakahata v. New York Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("Plaintiffs' actual and direct employer is an essential element of notice pleading" for claims alleging joint employment); *Cavallaro v.*

*UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 10 (1ˢᵗ Cir. 2012) (affirming dismissal because "even on these theories [of joint employment or integrated enterprise liability] some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible"); *Perez v. DXC Tech. Serv. LLC,* 2020 WL 1531363, at *4 (N.D. Cal. Mar. 31, 2020) ("Plaintiff's SAC is devoid of any facts to make a plausible claim that a joint employment relationship existed among Defendants.… Plaintiff's conclusory allegations that all 'Defendants' employed her and the putative class members are not sufficient.").

In *Davis v. Abington Mem. Hosp.*, 817 F. Supp. 2d 556 (E.D. Pa. 2011), the court dismissed a complaint that was filled "with conclusory labels describing the relationships between the Defendants, but never allege[d] for which of the 86 entities they actually worked or the nature of the relationship between those entities." *Id.* at 564. The plaintiffs' tactic of alleging in the alternative that the defendants were a "single-employer," which Plaintiffs use here, was unavailing because they never alleged to "which of the 86 entities they report each day, the relationship between their employer and the other entities, who directly supervised their employment, and any other information about who, specifically, set their rate of pay and other terms and conditions of employment." *Id.* at 565 n.47. The Court consequently found the complaint "the antithesis of 'notice' pleading" as "the Court and the Defendants are unable to determine the extent to which any of the 86 entities and/or individuals could be liable, either as primary violators, or through any derivative liability theory." *Id. Accord Attanasio v. Comm. Health Sys., Inc.,* 2011 WL 5008363, at *6 (M.D. Pa. Oct. 20, 2011) ("In failing to articulate any details of the arrangement between the Plaintiffs and Defendants, the Court cannot resolve any quantum of plausibility from the Plaintiff's claims. Moreover, the Court notes that this is not

only necessary as a legal matter, but as a practical concern as well where the Plaintiffs are seeking to represent a broad class with notice to be distributed.").

Here, Plaintiffs still do not distinguish any of the Diligent entities from one another. They continue to characterize them as "staffing agencies" before labeling them "collectively with Larry Browne" as "Diligent."  (TAC, ¶ 2)  Plaintiffs then allege broadly that "Defendants misclassify those delivery drivers hired through staffing agencies as 'independent contractors.'"  (TAC, ¶ 3)  Plaintiffs go on to accuse "Defendants" of failing to pay these delivery drivers overtime, minimum and "spread of hours" wages.  (TAC, ¶¶ 4-6)  These broad, undifferentiated allegations continue throughout the entire 73-page, 340-paragraph TAC.

Without facts that support their sweeping conclusions, Plaintiffs allege that all eight defendants – which include four "Diligent" entities, two Parts Authority entities, and two apex individuals – are joint employers of the delivery drivers.   They do so based on general allegations that all eight of them "share authority to hire and fire them [*i.e.,* delivery drivers], determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise the employees [presumably, the delivery drivers]" (TAC, ¶ 39).  They also claim all of them benefited from the work performed, "are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control" of them (TAC, ¶ 40), but again fail to allege supporting facts.  This is emblematic of the TAC, which is replete with allegations against undifferentiated "Defendants." (*See, e.g.,* TAC, ¶61 (a), (b), (c), (g), (h), (n), (o), (p), (q)(i)-(xiii), 62-80, 84-85, 88-89, 94-95, 100-101, 106-07, 112-113, 116-125, 127-128, 129(a)-(f), (j), (q)-(y), 134(a)-(n), 136(a)-(n), 137, 144, 146, 154, 156, 167, 169, 173, 176-79, 181, 184-85, 188-90, 192, 195-96, 199-201, 209, 215-

216, 220, 230, 235, 237, 242-43, 245, 250, 254, 256, 259, 261, 267, 270-272, 280, 288, 290, 298, 301, 306, 310-11, 317-19, 324, 327-331, 334-336, 338-340)

Further, Plaintiffs assert the same, general allegations against "Diligent" without including any facts specific to ALI or BBB or any conduct by Browne toward Plaintiffs. They summarily conclude that all of the Diligent-related defendants were PA's "agent with respect to certain [unspecified] employment actions and decisions" (TAC, ¶ 34), but cite no particular actions toward them. Plaintiffs also conflate the "Diligent" entities into one by accusing them of "interrelated operations, centralized control of labor centralized control of labor relations, common management, and common ownership or financial control" (*id.*, ¶ 36),[5] but, again, they cite no specific actions involving Plaintiffs that support this grand conclusion. Plaintiffs also conclude "[a]lternatively and/or cumulatively" that all four "Diligent" entities, plus Browne and others, "share authority to hire and fire delivery drivers, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise the employees" (*id.*, ¶ 37). The TAC does not, however, contain factual allegations that substantiate these conclusions vis-à-vis Plaintiffs.[6] Plaintiffs then claim – again

---

[5] This is presumably an effort to satisfy the single, integrated enterprise theory of liability, which arguably "applies in 'extraordinary circumstances' where plaintiff demonstrates 'sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.'" *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 285 (E.D.N.Y. 2013) (*quoting Herman v. Blockbuster Entm't Grp.*, 18 F. Supp. 2d 304, 308 (S.D.N.Y. 1998)), *reconsideration denied in part*, 2013 WL 1212790 (E.D.N.Y. Mar. 25, 2013).

[6] Plaintiffs make the same conclusory allegation, verbatim, against PA (*see* TAC, ¶ 32).

without facts – that the Diligent entities, plus Browne and others, "control, are controlled by, or are under common control with, the other…." (*Id.*, ¶ 38)[7]  This, too, is conclusory.

The Court should reject Plaintiffs' shotgun approach because such general allegations fail to render their claims plausible, particularly as against ALI or BBB.  *See Huang v. Shanghai City Corp.*, 2020 WL 2319166, at *4-10 (S.D.N.Y. May 11, 2020) ("Plaintiffs fail to plead sufficient factual content that the Chinatown Defendants meet this definition of employer as to Plaintiffs to cross 'the line between possibility and plausibility of entitlement to relief.'"); *Apolinar v. R.J. 49 REST., LLC,* 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) ("Merely reciting the elements of a joint employer arrangement—which is primarily what plaintiffs do here—is insufficient to plausibly allege joint employer status.").  It is not enough to recite legal standards without factual allegations that plausibly support those conclusions.  Even though it was filed nearly 12 months after the original complaint, the TAC still fails to identify to whom Plaintiffs allegedly reported, who exactly supervised their work, or who set their pay or other terms of their alleged "employment."  Indeed, Plaintiffs remain inconsistent as to who paid them:

| Initial Allegation | Subsequent Allegation |
|---|---|
| "Defendants paid Plaintiff Henao $450.00 per week in cash…." (TAC, ¶ 70) | "Parts Authority paid Plaintiff Henao $450.00 per week…." (TAC, ¶ 86) |
| "Defendants paid Plaintiff Avoseh approximately $462.28 per week…." (TAC, ¶71) | "Parts Authority paid Plaintiff Avoseh about $462.28 per week…." (TAC, ¶ 92) |
| "Defendants paid Plaintiff Williams $465.12 per week…." (TAC, ¶ 72) | "Parts Authority paid Plaintiff Williams about $465.12 per week…." (TAC, ¶ 98) |
| "Defendants paid Plaintiff Martin approximately $525.00 per week…." (TAC, ¶73) | "Parts Authority paid Plaintiff Martin $525.00 per week…." (TAC, ¶ 104) |
| "Defendants paid Plaintiff Mero approximately $400.00 per week…." (TAC, ¶ 74) | "Parts Authority paid Plaintiff Mero $400.00 per week…." (TAC, ¶ 110) |

---

[7] Plaintiffs allege generally that "Parts Authority and Diligent controlled work scheduled [sic] and other terms of condition [sic] and employment" of the "drivers" (TAC, ¶¶ 41-48) but do not allege that they themselves were subject to any such terms or conditions.  Nor do Plaintiffs allege any particular actions by ALI or BBB, let alone specific actions toward them by any Diligent-related entity.

**B.      Plaintiffs' Claims Against Browne are Not Plausible**

Liability under the FLSA extends to "employer[s]" only.  29 U.S.C. § 216(b).  *See also*

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  The FLSA defines

"employer" as "any person acting directly or indirectly in the interest of an employer *in relation*

*to an employee.*"  29 U.S.C. § 203(d)(emphasis added).  For an individual to qualify as an

"employer," there must be more than just "[e]vidence that [the] individual is an owner or officer

of a company, or otherwise makes corporate decisions that have nothing to do with an

employee's function....Instead, to be an 'employer,' an individual defendant must possess control

over a company's actual 'operations' in a manner that relates to a plaintiff's employment."

*Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).  Courts apply an economic realities test

to determine such operational control.  *Carter v. Dutchess Comm'y College*, 735 F.2d 8, 12 (2d

Cir. 1984).  This test looks at "whether the alleged employer (1) had the power to hire and fire

the employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment

records."  *Id.* [8]

Here, the facts alleged in the TAC fail to establish that Browne was Plaintiffs' employer.

Plaintiffs allege that "Browne exercised operational control over all of the Diligent Delivery

Service entities…; oversaw and/or implemented the wage and hour policies and practices

implicated in this action; [and] was ultimately responsible for the delivery drivers' wages and

wage statements."  (TAC, ¶ 35)  They claim he has been a principal, CEO, and owner of each

corporate Diligent defendant and maintained ultimate control over their operations.  (*Id.*, ¶ 36)

---

[8] Liability under the NYLL similarly extends only to "employer[s]" and their "agent[s]."  N.Y.
LAB. LAW § 662(1).  The NYLL defines "employer" as "any person ... employing any individual
in any occupation, industry, trade, business or service" or "any individual ... acting as employer."
*Id.* §§ 190(3) & 651(6).

This is not enough as such broad, conclusory allegations are insufficient.  *See Apolinar*, 2016 WL 2903278 at *5 ("Again, plaintiffs' conclusory allegations—which merely plead the presence of the factors relevant to whether an individual is a joint employer—are insufficient to plausibly show that Susan Kim was their employer for purposes of the FLSA.").

While Plaintiffs allege additional facts concerning defendant Browne – that he "approved of vehicle reimbursement" claims, use of tablets, policies, and negotiated the contract with Parts Authority, which allegedly "placed various restrictions on [other] drivers…." (TAC, ¶ 46) – none is tethered to any Plaintiff's own experiences.  These allegations are therefore irrelevant.  *See Apolinar*, 2016 WL 2903278 at *5 (dismissing the individual defendant as "the Amended Complaint is devoid of any non-conclusory allegations suggesting that Susan Kim exercised any degree over the particular Toasties location that employed plaintiffs, or that she otherwise had any direct relationship of control over plaintiffs' terms and conditions of employment").

"Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees."  *Vasto v. Credico (USA) LLC*, 2016 WL 4147241, at *6-9 (S.D.N.Y. Aug. 3, 2016) (quoting *Tracy v. NVR, Inc.,* 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009) (collecting cases), *rpt. and rec. adopted as modif.*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009)).  Here, Plaintiffs do not allege they had any contact with Browne.  They do not allege that he hired them, supervised their work, determined their schedules or tasks, or signed any of their paychecks.

Nor do Plaintiffs claim to have been subject to any of the alleged policies they attribute to Browne.  They do not allege that they made any claims for vehicle reimbursement, used tablets,

or been subject to any fees or any of the alleged policies, including the purported "Parts Authority Driver Code of Conduct."

When stripped of its conclusory allegations, the TAC is a prototypical "the-defendant[s]-unlawfully-harmed-me accusation" that cannot proceed as a matter of law.  As this defect has been raised promptly after each iteration of the complaint, it is by now apparent that Plaintiffs cannot allege facts sufficient to render their conclusions plausible.  The Court should therefore dismiss their claims against ALI and BBB with prejudice.  *See Weinreb v. Xerox Bus. Servs. LLC Health and Welfare Plan*, 323 F.Supp.3d 501, 522 (S.D.N.Y. 2018) (dismissing the second amended complaint with prejudice in light of the "repeated failure to plead a sustainable cause of action").  *See also Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (concluding the plaintiff was not entitled to "a third go-around").

## II.   THE COURT SHOULD DISMISS FOREIGN DEFENDANTS ALI, BBB AND BROWNE FOR LACK OF PERSONAL JURISDICTION

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). *Accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).  "In order to survive a motion to dismiss for lack of personal jurisdiction, [the] plaintiff[s] must make a prima facie showing that jurisdiction exists."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation and subsequent history omitted).  This "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Id.* (quotations, brackets and citation omitted).  While jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor," *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993), the Court should

"not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *Licci*, 673 F.3d at 59 (citations omitted).

Further, "[t]he lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Licci*, 673 F.3d at 59. First, "the plaintiff's service of process upon the defendant must have been procedurally proper"; second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and finally, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* at 59-60. None of these requirements is met in this case as to defendant Browne and the latter two requirements are not met as to defendants ALI or BBB.[9]

### A.  THERE IS NO GENERAL JURISDICTION OVER ALI OR BBB

ALI and BBB are both in Texas. (TAC, ¶ 34) Plaintiffs Henao, Mero and Martin claim they were employed in New York. (TAC, ¶¶ 52-54) Avoseh and Williams claim they worked at Parts Authority stores in Maryland and Washington, D.C., for unspecified "Defendants." (TAC, ¶¶ 55-56) Neither claims to be a citizen of New York or to have been harmed in New York. Allowing them to sue ALI and BBB, which do not do business in New York, Maryland or Washington, D.C., would deprive these defendants of fundamental due process. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017) ("The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State…. [A]ll of the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction.").

---

[9] Plaintiffs allege that "[t]he parties previously agreed to jurisdiction in this District" (TAC, ¶27), however, this is demonstrably false. ALI, BBB and Browne were not mentioned and did not agree to jurisdiction. (*See* Declaration of Andrew P. Marks in Support of Motion to Dismiss the Second Amended Complaint, sworn to on May 13, 2020 ("Marks Decl.") (Dkt. No. 94, 94-1 to 94-2), ¶¶ 2-9, Exs. A-B)

If the federal statute at issue "does not specifically provide for national service of process," and the defendants reside outside the forum state, the court must apply "the forum state's personal jurisdiction rules." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (*quoting Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)); *accord Brown v. Lockheed Martin Corp*., 814 F.3d 619, 624 (2d Cir. 2016). Here, the only federal question arises under the FLSA and "[t]he FLSA does not provide for nationwide service of process." *Pettenato v. Beacon Health Options, Inc*., 2019 WL 5587335, at *4 (S.D.N.Y. Oct. 25, 2019). Therefore, to determine personal jurisdiction over non-domiciliaries, the Court should first consider "the forum state's long-arm statute." *Id.*

> Whether considered under New York's long-arm statute or as a matter of constitutional due process, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

*Id.* (citation omitted; quoting *Bristol-Myers*, 137 S. Ct. at 1781).

Here, as in *Beacon*, Plaintiffs do not allege that the Foreign Defendants are subject to personal jurisdiction in New York, under C.P.L.R. § 302(a)(1) or otherwise, and certainly not with respect to the out-of-state claims of Avoseh and Williams had they "brought suit individually." *Pettenato,* 2019 WL 5587335 at *5. In short, the Court does not have jurisdiction over (i) nationwide FLSA claims against ALI and BBB based on alleged conduct outside New York, or (ii) foreign state law claims against ALI and BBB, which do not conduct business in New York (*see* Harvey Decl., ¶ 9).

Aside from "an exceptional case," a corporation is at home, and thus subject to general jurisdiction, consistent with due process, only in a state of its incorporation, or where it has its

principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 & n.19 (2014). *See also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view Daimler established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business — the 'paradigm' cases."). ALI and BBB are not incorporated or based in New York (TAC, ¶ 34).

New York's long-arm statute, C.P.L.R. § 301, authorizes general jurisdiction over corporations that have "engaged in such a continuous and systematic course of 'doing business' [in New York] that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33 (1990). This requires showing the defendant "does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917)). There is no such allegation here against ALI or BBB, nor would it be accurate if it was alleged.

Plaintiffs cannot manufacture personal jurisdiction over ALI or BBB by alleging that these foreign entities are part of a "single integrated enterprise" for FLSA purposes. It is now axiomatic that courts should not "accept as true a legal conclusion couched as a factual allegation." *Licci,* 673 F.3d at 59. Here, Plaintiffs call NEL, MLI, BBB and ALI a "single integrated enterprise" (TAC, ¶ 36) but they allege no facts that support this conclusion. It is not enough to merely recite the elements without supporting facts.

In *Dong Chul Kim v. Harte Hanks, Inc.*, 425 F. Supp. 3d 246, 256 (S.D.N.Y. 2019), the court rejected a similar effort to conflate entities without supporting facts. There, the plaintiff alleged that four entities "operated as a single integrated enterprise that jointly employed him" and he referred to them all as one "without distinguishing among them in his Complaint." *Id.* at

252.  He alleged that they shared certain resources and presented themselves to the public as a single company, arguing this was enough for the court to have personal jurisdiction over all of them.  *Id.* at 256.  The court rejected this effort to manufacture jurisdiction through conclusory allegations of joint employment.  *Id.* (adding "[the] allegations do not support Plaintiff's argument that the out-of-state Defendants had continuous and systematic contact *with New York* such that they are at home here." (emphasis in original)).

Plaintiffs claim the four Diligent entities are commonly owned and controlled, and advertise "as a single integrated enterprise" on the internet (TAC, ¶ 36), however, common ownership, control and advertising are not enough.  In *Dong Chul Kim*, the corporate parent also was alleged to have had central control over other corporate defendants, but it was "insufficient for Plaintiff to use generalized assertions of corporate crossover to establish that the out-of-state Defendants are 'at home' in New York."  *Id.* at 257.  *See also Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 588 (S.D.N.Y. 2020) ("Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees." (citing cases)); *Yeh v. Han Dynasty Inc.*, 2019 WL 633355 (S.D.N.Y. Feb. 14, 2019) (same).

Indeed, in *Dong Chul Kim*, the allegations of corporate control "tend[ed] to support the conclusion that the Company was running operations from places other than New York, since HHI, a Delaware corporation with headquarters in Texas, was the corporate entity that [allegedly] exercised 'centralized control' over the other Defendants."  *Id.*  The same can be said here as Plaintiffs admit the Diligent defendants are in Texas, which suggests Texas as the place of general jurisdiction.

In short, Plaintiffs' conclusory allegations of corporate cross-over are not enough to confer personal jurisdiction over the Foreign Defendants.

### B.   THERE IS NO SPECIFIC JURISDICTION OVER ALI OR BBB EITHER

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "For a court to exercise specific jurisdiction over a defendant, consistent with due process, the suit must arise from or relate to the defendant's contacts with the forum." *Dong Chul Kim*, 425 F. Supp. 3d at 255-56 (citing *Bristol-Myers Squibb Co.* 137 S. Ct. at 1780).  "This requires an analysis of whether the defendant purposefully directed his activity at the forum state." *Id.* at 256 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

New York's long-arm statute also authorizes courts to exercise specific personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. C.P.L.R. § 302(a)(1).  This imposes two critical conditions: "first, the nondomiciliary must 'transact business' within the state; [and] second, the claim against the nondomiciliary must arise out of that business activity." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). To assess whether or not a defendant has "transacted business" in the state, courts look at "the totality of the defendant's activities within the forum." *Continental Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).  "New York courts define transacting business as purposeful activity — some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Continental Indus.*, 586 F. App'x at 770.

17

In this case, nothing in the TAC shows that Plaintiffs' claims arise from any activity of ALI or BBB in New York. Nor could it as they do not transact business here and have not for at least six years. (Harvey Decl., ¶ 5)

In sum, the Court should dismiss ALI and BBB for lack of personal jurisdiction.

### C. THERE IS NO PERSONAL JURISDICTION OVER BROWNE HERE

To establish personal jurisdiction over an out-of-state corporate officer, "a plaintiff must show that the officer is a primary actor in the corporation's transaction in New York" and that "the company's activity was performed for the corporate officer's benefit and with his knowledge and consent." *Wolo Mfg. Corp. v. ABC Corp.*, 348 F. Supp. 3d 176, 197-98 (E.D.N.Y. 2018). Assessing specific personal jurisdiction over an individual defendant is a three-part inquiry: (1) did the individual purposefully direct his activities or consummate some transaction within the forum, or purposefully avail himself of the privilege of conducting activities there; (2) do the claims against him arise out of or relate to his activities in the forum; and (3) would exercising personal jurisdiction be unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Here, there are no allegations that Browne engaged in any activity in New York. At most, Plaintiffs claim that he "negotiated the contract with Parts Authority" that purportedly "included a new Parts Authority Driver Code of Conduct" (TAC, ¶ 46), however, there are no allegations that this occurred in New York. Nor do the claims against Browne appear to arise out of or relate to acts by him in New York. Plaintiffs do not claim to have had any interactions with him at all. The few, non-conclusory facts alleged against Browne in the TAC are an insufficient basis on which to find personal jurisdiction over him in New York. The Court should therefore dismiss the claims against him.

### III.     THE COURT SHOULD DISMISS THE CLAIMS AGAINST BROWNE AS HE HAS NOT BEEN SERVED WITH A SUMMONS AND COMPLAINT

Plaintiffs assert they served Browne in Texas by leaving a summons at a place of business with "Larry LeBlanc," whom the affiant-server says was authorized to accept service on behalf of "Diligent Delivery Service (Larry Browne)."  (Dkt. No. 58)  There is no evidence the summons was accompanied by the complaint.  Moreover, the Federal Rules of Civil Procedure do not permit service upon an individual by merely leaving a summons at his place of business. *See* Fed. R. Civ. P. 4(e)(2).  Nor does New York law permit service on an individual by merely leaving a summons at his/her office.  *See Washington Mut. Bank v. Murphy*, 127 A.D.3d 1167, 1174 (2d Dep't 2015) ("Jurisdiction is not acquired pursuant to CPLR 308(2) unless both the delivery and mailing requirements have been strictly complied with[,]" adding that a defendant's awareness of litigation "will not affect the absence of jurisdiction over him or her where service of process is not effectuated in compliance with CPLR 308").  The Court should therefore dismiss Browne pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

### CONCLUSION

For these reasons, the Court should dismiss ALI, BBB and Browne, with prejudice.

Dated: December 21, 2020
       Rye, New York

Respectfully submitted,

/s/ Andrew P. Marks
Andrew P. Marks
David S. Warner

DORF & NELSON LLP
555 Theodore Fremd Avenue
Rye, New York 10580
(914) 381-7600
amarks@dorflaw.com
dwarner@dorflaw.com

*Attorneys for Defendants Arizona Logistics, Inc., BBB Logistics, Inc., & Larry Browne*