## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAVIDSON HENAO, MIGUEL MERO, OMOBOWALE AVOSEH, RASHEEM MARTIN, and SHAWN WILLIAMS,** for themselves and all others similarly situated,<br><br>                   Plaintiffs,<br>   v.<br><br>**PARTS AUTHORITY, LLC, PARTS AUTHORITY, INC., YARON ROSENTHAL, NORTHEAST LOGISTICS, INC.** d/b/a "Diligent Delivery Systems," **ARIZONA LOGISTICS, INC.** d/b/a "Diligent Delivery Systems," **BBB LOGISTICS, INC.** d/b/a "Diligent Delivery Systems," **MICHIGAN LOGISTICS, INC.** d/b/a "Diligent Delivery Systems," **LARRY BROWNE, DOES 1-20** d/b/a "Diligent Delivery Systems," **and DOES 21-40**,<br><br>                   Defendants. | Case No. 1:19-cv-10720-LGS-BM |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION
## TO DEFENDANTS' SECOND MOTION TO DISMISS

A.      **Relevant Background and Applicable Law**

Plaintiffs allege that Defendants Northeast Logistics, Inc. ("NEL"), Michigan Logistics, Inc. ("MLI"), Arizona Logistics, Inc. ("ALI"), BBB Logistics, Inc. ("BBB") (collectively "Enterprise Defendants") operate as a "single integrated enterprise" which constitutes a statutory "employer" of Plaintiffs and other delivery drivers subject to personal jurisdiction in this Court. Plaintiffs allege that they and other delivery drivers were hired by the Enterprise Defendants, assigned by those companies to work for Defendants Parts Authority, LLC and Parts Authority, Inc. (together "Parts Authority"), and all of those defendants controlled terms and conditions of that work. The central merits issue is whether Plaintiffs and the other delivery drivers are statutory "employees" or independent contractors, which is governed by the "*Silk* factors" including "the degree of control exercised by the employer over the workers." *U.S. v. Silk*, 331 U.S. 704 (1947); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988). NEL and MLI admit hiring and assigning workers in New York.

ALI, BBB and Larry Browne previously moved to dismiss the claims against them based on lack of personal jurisdiction. ECF Doc. #'s 132 & 133. The matter was briefed. *Id.*; ECF Doc. #'s 145 & 148. In their opposition, Plaintiffs informed the Court that "evidence of how [Defendants] operate[] as a unified entity remains in the exclusive possession and control of Defendants" and "[a]s such, Plaintiffs should, at a minimum, be allowed to complete discovery on this issue." ECF Doc. # 145, at 18. The Court granted Plaintiffs' request for limited jurisdictional discovery as to Defendants Arizona Logistics, Inc., BBB Logistics and Mr. Browne. ECF Doc. # 152, at 1. The Court further ordered Plaintiffs to file a supplement to their opposition to Defendants' motion to dismiss after completing such discovery and by May 21, 2021. *Id.*, at 2.

A court determines whether it has a constitutional basis for exercising personal jurisdiction first, by analyzing "whether the defendant has sufficient minimum contacts with the forum (the 'minimum contacts' [inquiry]) ... and, if so, second, whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' (the 'reasonableness inquiry')." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567-68 (2d Cir. 1996).

Second Circuit district courts find that a showing that an entity is part of a "single employer" (aka "single integrated enterprise") is sufficient to confer personal jurisdiction on that entity. *See, e.g.*, *Liu v. Canteen 82, Inc.*, 2018 U.S. Dist. LEXIS 197907, at *11-17 (S.D.N.Y. Nov. 20, 2018); *Williams v. PMA Cos.*, 419 F.Supp.3d 471, 485-87 (N.D.N.Y. Nov. 25, 2019).

In *Liu*, defendants that operate restaurants in Connecticut argued that, while their status as joint employers with a defendant that operates another restaurant in New York may be relevant to liability, such status is irrelevant to personal jurisdiction. 2018 U.S. Dist. LEXIS 197907, at *11. This District rejected those defendants' reliance on "non-precedential, out-of-state cases" offered to support that proposition. *Id.* at *11-12. Instead, *Liu* recognized that "[s]ister courts in this District have found that adequately alleging a joint employment relationship is 'sufficient to render defendant amenable to jurisdiction in in New York." *Id.* at *12 (citing *Franklin v. Waters,* 2018 U.S. Dist. LEXIS 61667, *8-9 (S.D.N.Y. Apr. 10, 2018); *Mao v. Sands Bethworks Gaming LLC,* 2016 U.S. Dist. LEXIS 56742, *9-11 (S.D.N.Y. Apr. 28, 2016) (analyzing allegations of joint employment to determine whether an action should be dismissed for lack of personal jurisdiction). Then, *Liu* found allegations of sufficient common control of those defendants:

> Plaintiffs allege that the Corporate Defendants shared "a high degree of interrelated and unified operation, a common management, centralized ... labor relations, common control and ownership, common business purposes, and interrelated business goals." (FAC 23 ¶ 77). Specifically, Plaintiffs claim that Defendant Yeh Ching owns and operates Canteen 82 in New York City, and is the joint owner of Steam Restaurant and Steam Darien in Connecticut. (*Id.* at 22-23 ¶¶ 68-72). All

2

> three restaurants, according to Plaintiffs' allegations, operate under her common control. (*Id.* at 22 ¶ 72). In addition to hiring employees and assigning job duties, Ching directs the transfer of *both* employees and materials, including food items, between the restaurants in New York and Connecticut. (*Id.* at 22 ¶ 72, 23 ¶ 76; *see also* Pl. Opp. 2).

*Id.*, at *13-14.  Thus, *Liu* concluded that minimum contacts had been sufficiently alleged because the "[p]laintiffs ha[d] sufficiently alleged both formal and functional control, indicative of a joint employer relationship between all three restaurants. Therefore, Plaintiffs have demonstrated a statutory basis for personal jurisdiction under [N.Y. C.P.L.R.] § 302(a)(1)…" *Id.* at *14.

*Liu* further found that this District's exercise of personal jurisdiction over the out-of-state defendants comports with constitutional due process.  Judge Failla reasoned that, because the plaintiff had alleged that the defendants together transacted business in New York in a variety of ways, including, like here, conducting business in New York and hiring New York residents under a different corporate name, those defendants "purposefully availed themselves of New York law and could have reasonably foreseen being haled into court in New York." *Id.* at *15-16.  Further, *Liu* found that exercise of jurisdiction over the out-of-state defendants would not offend traditional notions of fair play and substantial justice because the out-of-state defendants "are part of an integrated business enterprise controlled by Defendant Yeh Ching who also maintains a New York business in Manhattan." *Id.* at *16 (recognizing that "the Second Circuit has stated that a defendant can rarely show the exercise of personal jurisdiction to be unreasonable if he has sufficient minimum contacts with the forum state.") (citing *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)).  *Liu* further recognized that "[b]ecause Plaintiffs are residents of New York, the state has a 'manifest interest in providing effective means of redress'" and obtaining relief in New York, the plaintiffs' state of residence, would also be in the in plaintiffs' interest. *Id.* at *17

3

(quoting *Dandong Old N.-E Agric. & Animal Husbandry Co. v. Hu*, 2017 U.S. Dist. LEXIS 122471, at *21 (S.D.N.Y. Aug. 3, 2017)).

Based on that thorough analysis, this District denied the moving defendants' motion to dismiss for lack of personal jurisdiction. *Id.* at *11-17.

*Williams* is also squarely point. 419 F.Supp.3d at 485-87. *Williams* analyzed whether the district court could exercise personal jurisdiction over a related entity by considering whether the two entities shared a "single employer" relationship. *Id.* It recognized the applicable test as "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" *Id.*, at 485-86 (citing *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 156 (2d Cir. 2014) (quoting *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir. 1995)). "Although no one factor is determinative of the analysis, the second factor (regarding centralized control of labor relations) is the most significant." *Id.* (citing *Turley*, 774 at 156; *Cook*, 69 F.3d at 1240-41). *Williams* denied an out-of-state defendants' motion to dismiss based on that court's finding that the plaintiff had sufficiently alleged all four of the "single employer" factors. *Id.*, at 485-87 ("the Court finds that, at this stage of the litigation, Defendant Old Republic and its subsidiaries constitute a single employer for jurisdictional purposes only.").

**B.  Based On The Additional Discovery Ordered By The Court, Plaintiffs Can Easily Exceed The Threshold For Pleading Of A "Single Employer" Relationship, Which Is Sufficient For Exercise of Personal Jurisdiction Over Defendants ALI and BBB**

The evidence amply shows that Defendants ALI and BBB share a "single employer" relationship with NEL and MLI. Defendants acknowledge personal jurisdiction over NEL and MLI. Thus, pursuant to *Liu* and *Williams*, pleading that the Enterprise Defendants share a "single employer" relationship based on newly-acquired evidence is sufficient for personal jurisdiction over ALI and BBB.

4

That "single employer" relationship is demonstrated by the following evidence obtained through the recent jurisdictional discovery ordered by the Court and additional investigation facilitated by Defendants' recent discovery responses:

**Factor 1:  Interrelation of Operations**

The Enterprise Defendants share a principal place of business located at 9200 Darrington Road, Suite 100, Houston, Texas, 77060.  Exs. 1-4. All of the Enterprise Defendants conduct business under the name "Diligent Delivery Systems."  Exs. 5-8; Ex. 9, 15:16-21, 23:10-16.

Norlyn Enterprises, Inc. ("Norlyn") also maintains its principal place of business in the same office suite located at 9200 Darrington Road, Suite 100, Houston, Texas, 77060 and conducts business as "Diligent Delivery Systems." Exs. 10-11. Norlyn provides "accounting, billing, collection, finance, human resources, information technology, independent contractor resources, legal, marketing and sales" services for all of the Enterprise Defendants. Exs. 12-13, Ans. to Int. # 8; Ex. 9, 15:16-21, 37:11-19, 38:18-21.  Norlyn does not serve any customer, rather it only provides these services to entities doing business as "Diligent Delivery Systems."  Ex. 9, 40:7-10.

Defendants' Fed. R. Civ. P. 30(b)(6) designee, Chief Financial Officer Darl Petty, admits that Defendants NEL and ALI entered into the same Master Services Agreement with the Parts Authority defendants.  Ex. 14; Ex. 9, 15:16-21, 23:17-24:3. Mr. Bruder, Norlyn's Chief Sales Officer ("CSO") signed that Master Services Agreement with Parts Authority on behalf of at least Defendants NEL and ALI.  Ex. 9, 17:23-18:7, 24:14-18, 26:1-8.

Within that Master Service Agreement, Parts Authority and at least Defendants NEL and ALI establish a "Driver Code of Conduct" governing the work of delivery drivers hired by at least NEL and ALI to work for Parts Authority, including such rules as "[d]rivers should be clean and well groomed," "[l]oads should be verified before leaving the dock. . . . Any shortages or damaged

5

goods should be reported to the dispatcher," drivers "should keep their vehicles locked and the alarm system activated at all times that the contractor is not present in the vehicle," drivers "should complete all paperwork each day and return that paperwork to the warehouse or client," and "undue familiarity with customer employees should be avoided." Ex. 14, at PA0404-05.

"Diligent Delivery Systems" executed a later "Contractor Agreement" with Parts Authority in 2017. Ex. 15. That agreement was signed by Defendant Larry Browne, the CEO of all of the Enterprise Defendants and Norlyn. Ex. 15, at Bates AZL-102368; Ex. 9, 30:12-16; Exs. 12-13, Ans. to Int. # 5; Exs. 1-4 & 11.

Mr. Browne, Mr. Bruder and Doak Medchill, the Chief Operating Officer ("COO") of all of the Enterprise Defendants and Norlyn, hold authority to sign contracts with the entities doing business as "Diligent Delivery Systems," including the Enterprise Defendants. Exs. 12-13, Ans. to Int. # 5; Ex. 9, 8:12-17, 15:16-21, 23:10-16, 32:2-22.

Defendant Larry Browne, CEO of all of the Enterprise Defendants and Norlyn, holds meetings with the managers of the Enterprise Defendants in which Mr. Browne reviews profitability, gross margin, revenue and payments to delivery drivers working for all of the Enterprise Defendants. Ex. 9, 15:16-21, 42:23-43:11.

The Enterprise Defendants even share the same bank account. Ex. 9, 43:12-24. Defendant Browne is the signer on that bank account and Norlyn's accounting department maintains day-to-day control of that account. *Id.*, 15:16-21, 43:12-44:14.

**Factor 2:  Centralized Control of Labor Relations**

Brenda Soto, manager of Norlyn's human resources department, "provides human resources support" to all of the Enterprise Defendants. Ex. 9, 15:16-21, 19:7-19, 37:11-19, 38:18-21.

6

Gina Volking, Norlyn's manager of accounting, makes sure that all delivery drivers working for the Enterprise Defendants are paid properly.  Ex. 9, 7:17-25, 15:16-21, 20:10-21:9.

Norlyn centrally maintains contracts with delivery drivers, work records, and payroll records for all of the Enterprise Defendants.  Ex. 9, 15:16-21, 38:22-39:16, 39:22-40:6.

Norlyn makes sure that delivery drivers are "properly contracted" and insured, runs background checks on delivery drivers, and answers delivery drivers' questions about pay and other work issues.  Exs 12-13, Ans. to Int. # 8; Ex. 9, 40:12-41:6.

Fe Cruz, Norlyn's Controller, presides over all accounting and bookkeeping duties for all of the Enterprise Defendants.  Ex. 9, 15:16-21, 21:11-19, 41:16-24.

**Factor 3:  Common Management**

Defendant Browne is the sole director of all of the Enterprise Defendants and Norlyn.  Ex. 16, Ans. to Int. # 5; Exs. 12-13, Ans. to Int. # 2; Exs. 1-4; Exs. 17-20, Articles 7.

The Enterprise Defendants and Norlyn share all of the same officer.  Mr. Browne serves as the President, Vice President, Secretary and Treasurer of all those entities. Ex. 12-13, Ans. to Int. # 5; Exs. 1-4.

The Enterprise Defendants and Norlyn share all the same executives.  As stated above, Mr. Browne is CEO of all Enterprise Defendants and Norlyn.  Exs. 12-13, Ans. to Int. # 5.  He is the top of the hierarchy at all of those companies.  Ex. 9, 15:16-21, 18:10-24.

Mr. Petty is the CFO of all of the Enterprise Defendants and Norlyn; Exs. 12-13, Ans. to Int. # 5; Ex. 9, 6:14-16, 15:16-21, 18:10-24.  As CFO, Mr. Petty performs the same duties for of the Enterprise Defendants, including preparing financial statements and contributing to decisions regarding business, sales and operations.  Ex. 9, 12:11-13:19.

Mr. Petty's role in determining delivery driver pay for all of the Enterprise Defendants includes analyzing financial statements to determine if those companies "are paying drivers too much" or those companies should pay more to attract drivers. Ex. 9, 13:20-14:14. Norlyn's operations department, led by Mr. Medchill, and Mr. Bruder, the CSO, also participate in determining delivery driver pay. Ex. 9, 15:8-15.

Mr. Medchill is the COO of all of the Enterprise Defendants and Norlyn. Exs. 12-13, Ans. to Int. # 5; Ex. 9, 8:12-17.

As stated above, Mr. Bruder is the CSO of all of the Enterprise Defendants. Ex. 21, 12:5-14, 30:18-22. He is employed by Noryln. Ex. 9, 17:23-18:8.

Perhaps most indicative of common management, all of the general managers of Enterprise Defendants report to Noryln's COO, Mr. Medchill. Ex. 9, 15:16-21, 42:19-23.

Diligent's "Independent Contractor Resources" ("ICR") group, consisting of approximately five of Norlyn's employees in Texas, sends mass text communications to Parts Authority delivery drivers throughout the nation. Ex. 22, 15:22-16:9, 31:11-33:22. Camille Harvey, Corporate Manager of the ICR group, is based in Houston, Texas. Ex. 23.

**Factor 4:  Common Ownership and Financial Control**

Defendant Larry Browne is the sole owner of each of the Enterprise Defendants. Ex. 16, Ans. to Int. # 3; Exs. 12-13, Ans. to Int. # 2. Mr. Browne is also the sole owner of Norlyn. Ex. 24, 92:24-93:8.

As stated above, the Enterprise Defendants all share a common bank account. Ex. 9, 15:16-21, 43:12-44:14. Mr. Browne controls that account as the signer and Norlyn's accounting department maintains day-to-day control over that account. *Id.*

8

In sum, this abundance of evidence of a "single employer" relationship, when analyzed in light in of the Second Circuit's four-factor test, far exceeds the threshold for pleading a plausible claim that the Enterprise Defendants form a "single employer," with each such company subject to personal jurisdiction in this Court. *Liu, Williams.*

**C.     Due Process Considerations Heavily Favor Exercise of Personal Jurisdiction**

Like this District's decision in *Liu,* this District's exercise of personal jurisdiction over ALI and BBB will comport with constitutional due process. In the same way that a "single employer" conducted business in both Connecticut and New York through different corporate entities was found in *Liu*, the newly-acquired evidence here clearly shows that the Enterprise Defendants together conduct an integrated business, including ongoing business in New York. Judge Failla reasoned in *Liu* that, because the plaintiff had alleged that the defendants together transacted business in New York in a variety of ways, including by hiring New York residents and operating a restaurant in New York, those defendants "purposefully availed themselves of New York law and could have reasonably foreseen being haled into court in New York." *Id.*, at *15-16. For the same reason, all of the Enterprise Defendants have purposefully availed themselves of New York law and could have reasonable foreseen being haled into court in New York. In both cases, the jurisdiction over all defendants will not offend traditional notions of fair play and substantial justice because the out-of-state defendants "are part of an integrated business enterprise" controlled by the same person or persons that also maintains business in New York. *Id.*, at *16. Importantly, "the Second Circuit has stated that a defendant can rarely show the exercise of personal jurisdiction to be unreasonable if he has sufficient minimum contacts with the forum state." *Id.* (citing *Eades,* 799 F.3d at 168 (quoting *Licci,* 673 F.3d at 59). Moreover, as in *Liu*, "[b]ecause Plaintiffs are residents of New York, the state has a 'manifest interest in providing

9

effective means of redress'" and obtaining relief in New York, the plaintiffs' state of residence, would also be in the in plaintiffs' interest.  *Id.*, at *17 (quoting *Dandong Old N.-E Agric. & Animal Husbandry Co. v. Hu,* 2017 U.S. Dist. LEXIS 122471, *21 (S.D.N.Y. Aug. 3, 2017)).  Thus, the same reasons this District found that exercise of personal jurisdiction over out-of-state defendant would not offend due process in *Liu* likewise apply in this litigation.

### D.     Personal Jurisdiction Over Defendant Browne

Plaintiffs' counsel recently located an unpublished decision, which, like *Scalia v. Arizona Logistics Inc.*, No. 2020 U.S. Dist. LEXIS 59256, at *2-6 (D. Ariz. Mar. 24, 2020), found personal jurisdiction over Mr. Browne based on his control of the same integrated enterprise, including entities conducting business as "Diligent Delivery Systems" in the state where that litigation was filed.  *See Baten v. Michigan Logistics, Inc.*, No. 18-10229, ECF No. 40 (C.D. Ca. Feb. 11, 2019) (Ex. 25) (finding jurisdiction over Mr. Browne because of, *inter alia*, his "design and implementation of the independent contractor business model"); *accord Scalia* (finding jurisdiction over Browne because he "negotiated and approved some client contracts" in the state).

### E.     Conclusion

Based on substantial evidence newly-acquired through the Court's recent grant of leave to conduct jurisdictional discovery, Plaintiffs have now amply shown a "single employer" relationship which justifies exercise of personal jurisdiction over Defendants ALI, BBB and Mr. Browne.  No due process concerns are implicated under applicable law.  Thus, the Court should grant Plaintiffs leave to amend / fortify their allegations of a "single employer" relationship between the Enterprise Defendants, namely Northeast Logistics, Inc., Michigan Logistics, Inc., Arizona Logistics, Inc. and BBB Logistics, Inc.,  based on the newly-discovered evidence.  Further, the Motion to Dismiss should be denied in full.

        Respectfully Submitted,
        Jeremiah Frei-Pearson
        Andrew White
        **FINKELSTEIN,BLANKINSHIP,**
        **FREI-PEARSON & GARBER, LLP**
        One North Broadway, Suite 900
        White Plains, New York 10601
        Telephone: (914) 298-3281
        Facsimile: (914) 824-1561
        jfrei-pearson@fbfglaw.com

        **WEINHAUS & POTASHNICK**
        By:   */s/ Mark Potashnick*
        Mark Potashnick, MO Bar # 41315
        (admitted *pro hac vice*)
        11500 Olive Blvd., Suite 133
        St. Louis, Missouri 63141
        Telephone: (314) 997-9150 ext. 2
        Facsimile: (314) 984-810
        markp@wp-attorneys.com

        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was served on Defendants' attorneys of records via the Court's electronic case filing system on the 21st day of May, 2021.

        */s/ Mark Potashnick*