

FBFG | Finkelstein, Blankinship,
Frei-Pearson & Garber, LLP

1 NORTH BROADWAY, SUITE 900
WHITE PLAINS, NY 10601
Phone: (914) 298-3281
Fax: (845) 562-3492
www.fbfglaw.com

October 8, 2021

**BY ECF**
The Honorable Barbara Moses
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007
Telephone: (212) 805-0228

Re:   *Henao v. Parts Authority, LLC*, No. 19-10720 (S.D.N.Y.)
       **Ripe Discovery Disputes**

Dear Judge Moses,

In accordance with the Court's Order, ECF No. 175, we write on behalf of Plaintiffs in the above-captioned matter to request a pre-motion conference regarding two ripe discovery disputes: (1) the implementation of a protocol for the production of electronically-stored information ("ESI") and (2) Parts Authority's refusal to run proposed search terms across its G Suite platform to provide hit counts and negotiate reasonably narrow and proportionate terms.

**Plaintiffs Have Been Attempting To Obtain Relevant**
**Electronic Discovery From Defendants For Well Over A Year.**

Plaintiffs served their initial discovery demands, including interrogatories and requests for production of documents, on December 24, 2019.[1]  On February 14, 2020, the Court temporarily stayed all discovery.  ECF No. 84.  On April 8, 2020, the Court lifted a stay on written discovery in this matter, effective April 29, 2020 (following the exchange of revised initial disclosures on that date).  ECF No. 89.  Diligent served responses and objections to Plaintiffs' requests on June 26, 2020, and Parts Authority served responses and objections to Plaintiffs' requests on July 15, 2020.

From July 6, 2020 through August 11, 2020, the Parties met and conferred over discovery disputes related to Plaintiffs' discovery demands, however during those conferrals, Defendants refused to confer about the production of ESI other than to represent that they would not produce electronic documents apart from those that directly name or reference the named Plaintiffs. Plaintiffs submitted a letter concerning ripe discovery disputes to Your Honor on August 17, 2020, including the issue of ESI.  ECF No. 104, at 1-2.  Defendants filed a responding letter on August 26, 2021 (ECF No. 109) and Your Honor held a discovery conference on September 8, 2020.  ECF Nos. 110-111.  On September 10, 2020, Your Honor issued a discovery Order on specific disputes raised in the Parties' letters.  ECF No. 111.  While Diligent provided supplemental discovery

---

[1] Plaintiffs issued their initial discovery demands to Defendants Parts Authority, LLC, Parts Authority, Inc., and Northeast Logistics, Inc. d/b/a Diligent Delivery Systems.  Plaintiffs subsequently served discovery demands on Defendant Michigan Logistics, Inc. d/b/a Diligent Delivery Systems, along with additional demands to Northeast Logistics, Inc., on September 4, 2020.

responses based on Your Honor's Order on September 23, 2020, Parts Authority did not provide supplemental responses until December 7, 2020.

The Parties continued conferring on discovery issues, including ESI, from September 2020 to December 2020.[2] On January 8, 2021, after these conferral efforts failed to make significant headway on resolving the ESI disputes or in clarifying Plaintiffs' understanding of Defendants' ESI systems and databases,[3] Plaintiffs served notices of depositions pursuant to Fed. R. Civ. P. 30(b)(6) on Defendants, seeking qualified witnesses to testify concerning their ESI documents and computer systems.

In advance of a February 8, 2021, discovery conference before Your Honor, the Parties submitted a status letter on February 4, 2021, advising that the Parties had "not yet reached agreement on the scope of discovery concerning electronically stored information ('ESI') or ESI protocols." ECF No. 142. During the February 8, 2021 conference, Your Honor directed the Parties to meet and confer in good faith to resolve any remaining disputes concerning the limited 30(b)(6) depositions on these ESI issues. ECF No. 143. Between February 9, 2021, and April 5, 2021, the Parties conferred by phone and/or email on at least 11 occasions concerning ESI and the 30(b)(6) depositions. After two extensions on reports to the Court during the course of these conferrals (ECF Nos. 146-147, 149-150), on April 21, 2021, the Parties updated the Court that the 30(b)(6) depositions would be conducted the following month. ECF No. 155.

The 30(b)(6) depositions were held on May 11, 2021 (for Diligent's witness) and May 18, 2021 (for Parts Authority's witness). However, Plaintiffs identified numerous deficiencies in both witnesses' preparedness and the sufficiency of their testimony. Throughout July and August 2021, the Parties conferred by letter, email, and phone approximately a dozen more times concerning the 30(b)(6) depositions and ESI. On August 18, 2021, the Parties submitted a status letter to Your Honor in which, among other discovery topics, they noted that conferrals over ESI protocol and electronic discovery were still ongoing. ECF No. 165.

Meet and confer efforts have continued, as referenced in Plaintiffs' September 30, 2021, letter to Your Honor (ECF No. 174), including, most recently, via a telephone conference on Monday, September 20, 2021 at 10:00am for approximately one hour, on Wednesday, September 22, 2021 at 11am for approximately one hour, and on Wednesday, October 6, 2021 3:00pm for approximately half an hour. Attorneys David Warner, for Diligent; Sharon Stiller for Parts Authority; and Jeremiah Frei-Pearson, Amanda Chan, and Mark Potashnick for Plaintiffs were all

---

[2] On January 8, 2021 the Parties requested a stay on discovery pending mediation. ECF No. 137. On January 11, 2021, Your Honor granted the discovery stay until February 15, 2021. ECF No. 139. The mediation was held on February 2, 2021, however the Parties were unable to resolve the case. *See* ECF No. 142.

[3] Parts Authority's counsel insisted that the top priority in searching ESI in this case was that Parts Authority not replicate all of the work it had allegedly performed in producing emails in the related individual arbitrations. Notably, Parts Authority had produced a total of less than 10 emails (most of which simply named individual arbitration claimants by name and did not address the underlying policies at issue) in the related arbitrations. Because Parts Authority's position was, in Plaintiffs' view, unreasonable, Plaintiffs were forced to notice 30(b)(6) depositions.

present at these conferrals.  While these issues are now ripe for the Court, the Parties have continued to confer by email up to and including the date of this letter, October 8, 2021, and counsel for Plaintiffs agreed to confer again by phone prior to submitting this letter; however Defendants' counsel were not all available until Monday, October 11, 2021.  *See* Exhibit 1, October 8, 2021 Correspondence between Attorneys Jeremiah Frei-Pearson and Sharon Stiller. Although the meet and confer efforts have narrowed some issues related to ESI, the Parties have been unable to resolve issues described in this letter, which are now ripe for the Court's assistance. Plaintiffs respectfully request that Your Honor resolve these issues so that Plaintiffs may finally receive the substantive ESI documents that they have been seeking for over a year.

## ESI Protocol

Plaintiffs and Defendants have drafted competing ESI protocols. *See* Exhibits 2-3.[4]  The parties have conferred, and the dispute over which ESI protocol should be entered is ripe for the Court.  Plaintiffs' proposed ESI protocol (Exhibit 2, Plaintiffs' Proposed ESI Protocol) contains necessary provisions regarding search methodology, data integrity, and validation -- especially given that Parts Authority's production of documents and data has been problematic in various related arbitrations.

Pursuant to Your Honor's' Individual Rule 2(b), Plaintiffs first proposed an ESI protocol to Defendants on August 13, 2021 (Exhibit 4, August 13, 2021 Correspondence with Defense Counsel).  On August 27, 2021, Plaintiffs' Counsel requested a time to confer about "Plaintiffs' proposed ESI protocol (re-attached to this email) . . . . Please provide any suggested edits by redline in advance of the conferral.  We reserve the right to revise the protocol, search terms, and custodians pending disclosure of the information sought during the 30(b)(6) depositions." *See* Exhibit 4, August 27, 2021 Correspondence with Defense Counsel.

At the September 20, 2021 conferral, Defendants argued that an ESI protocol was unnecessary.  Plaintiffs' Counsel explained to Defendants that "Plaintiffs need something governing the search of ESI, especially given Defendant's [Parts Authority prior experience producing [deficient] discovery documents in related arbitrations.  Plaintiffs feel it is very necessary to have an agreed upon document governing the production of discovery." Exhibit 6. At the September 22, 2021 conferral, Parts Authority insisted that the ESI protocol could not contain a de-duplication provision because Parts Authority had no means of de-duplicating its document production without printing out all of its documents.[5]  At the October 6, 2021 conferral, Plaintiffs' Counsel again explained to Defendants that the provisions of their offered ESI protocol in order to provide clear expectations for discovery for all parties -- especially given that Parts Authority's data and document production has been in question in related arbitrations. *See* Exhibit 8.

---

[4] After originally arguing that an ESI protocol was unnecessary, Defendants provided a competing protocol for the first time on October 5, 2021.

[5] Notably, this contradicts Parts Authority's previous production in a related arbitration which it claimed the search terms results had been de-duplicated. *See* Exhibit 7 (September 24, 2020 Email from Counsel Sharon Stiller).

Plaintiffs stated:

> For example, Defendants object to the "Data Integrity" provision of Plaintiffs' proposed ESI protocol. [Defendants] fail to articulate any particular reason as to why the parties should not be held to a data integrity provision -- especially where the integrity of Parts Authority's data has been at issue in various previous arbitrations -- with Arbitrator Weinstock recently holding that the data Parts Authority produced was incomplete.
>
> Further, there is simply no burden to the promise of producing data with integrity, assuming that all parties were planning on doing so regardless. It is with the Data Integrity provision that all parties are on equal terms and understand the expectations of discovery. Despite our three conferrals, we have yet to hear a single specific reason as to why a provision such as this is objectionable. Instead, Defendants only state that it's too general and not specific. On the contrary, the Data Integrity provision is especially specific and necessary for the parties here, where Parts Authority has a history of questionable production of data and documents.
>
> The likewise is true for the "Search Methodology" and "Validation Protocol" provisions. These clauses are especially applicable to the instant case of *Henao v. Parts Authority* -- because Parts Authority's disclosure of documents and process of search methodology has been at issue in the past. Plaintiffs' proposed ESI Protocol furthers the interest of efficiency. When all the parties are on the same page and understand all of the expectations, our discovery will be much more efficient, speedy, and transparent. Plaintiffs' proposed ESI Protocol will prevent future discovery disputes.

*Id. See also* Exhibit 9, *Pannell v. Parts Authority*, AAA Case No. 01-20-0009-6223, at 4, 7 n.3 ("[T]he Arbitrator finds significant fault with the Employer's records"), 14, 16. These provisions are regularly included and approved by courts. *See Moore v. Publicis Groupe SA*, No. 11-1279, 2012 WL 1446534, at *2 (S.D.N.Y. Apr. 26, 2012) ("[T]he ESI protocol contains standards for measuring the reliability of the process and the protocol builds in levels of participation by Plaintiffs. It provides that the search methods will be carefully crafted and tested for quality assurance, with Plaintiffs participating in their implementation.").

Plaintiffs believe that a validation protocol is particularly important in this matter, as Defendants have engaged in obstructive discovery strategies in the past. For example, in the United States Department of Labor's ("DOL") action against Diligent and Parts Authority for the same misclassification and under-reimbursement scheme in Arizona, the DOL determined that Diligent had been hiding significant documents in the custody of CEO Larry Browne, ultimately resulting in the DOL joining him as a named defendant. *See Sec. of Labor v. Ariz. Logistics, Inc.*, No. 16-4499, ECF No. 103 at 3-6 (D. Ariz. Aug. 31, 2018) (recounting "the odyssey that Diligent forced the Secretary to undertake" when seeking relevant documents); *id.* at ECF No. 1-5 (describing how Diligent "wrongly withh[eld] highly relevant documents"). Against that backdrop, in this case and related arbitrations, Parts Authority has repeatedly claimed that it has **no** emails discussing any of the policies at issue in this and related matters. This assertion is not

4

credible, as Parts Authority's witnesses have, under oath, stated that any given time there are typically at least five drivers whom Plaintiffs assert are misclassified and who are part of the putative collective working at any Parts Authority location (with Parts Authority having nearly 200 stores). It is simply not credible that a company worth over $500 million would not have any emails relating to such a substantial part of its business.

Further, where a party has made "inconsistent representations concerning discovery," thorough and detailed ESI discovery is warranted. *See Hutchins v. Palmer*, No. 12-5927, 2015 WL 13713335, at *12 (E.D.N.Y. Mar. 31, 2015) ("[T]he Court finds justification for the concerns raised regarding the accuracy and comprehensiveness of Defendants' ESI production. Accordingly, the Court will permit Plaintiffs' counsel to . . . explore in greater detail all of the steps undertaken to preserve ESI[.]"). This is the case here, where Parts Authority has made several dubious statements regarding ESI.

### Parts Authority's Refusal To Run Proposed Search Terms Across The G Suite

After many preparatory conferrals, Plaintiffs first submitted their proposed search terms to Parts Authority on August 27, 2021. *See* Exhibit 5. Parts Authority refused to inform Plaintiffs of the search results of such terms until October 6, 2021 -- and Parts Authority only shared the search term results after Plaintiffs were forced to repeatedly request those results. *See* Exhibit 8 Summary of October 6 Meet and Conferral ("[Parts Authority] did not initially tell [Plaintiffs] the 'results of the search.' In actuality, [Parts Authority] made generalized statements about the search terms, waited until near the end of our conferral to instruct your associate to send [Plaintiffs] the search terms yield, and now misstate the substance of our conversation.").

Plaintiffs submitted narrowed search terms (*See* Exhibit 10, Plaintiffs' Second Set of Proposed Search Terms) on the morning of October 7, 2021 -- less than a day after Plaintiffs had received Parts Authority search term yield results. That same day, Counsel for Parts Authority stated that it would not run search terms again "until Plaintiff agrees to limit the search to designated custodians.[6] Running searches over the entire G Suite system is not productive." *See* Exhibit 8. This blanket refusal is inappropriate, as sharing search term yield results is simply part and parcel of regular discovery practices in the Southern District of New York. *See Jose Luis Pelaez, Inc. v. Scholastic, Inc.*, No. 11-602791, 2018 WL 1891116, at *1 (S.D.N.Y. Apr. 3, 2018) ("The Court . . . directed the parties to continue to meet and confer to try to reach an agreement regarding custodians and search terms."); *Precision Med. Grp., LLC v. Blue Matter, LLC*, No. 20-2974, 2020 WL 7352509, at *3 (S.D.N.Y. Dec. 15, 2020) (describing back-and-forth exchange of proposed search terms, hit-counts, and counter-proposed terms and ordering party to run specified search terms based, in part, on results); *NAACP Legal Def. & Educ. Fund, Inc. v. Dep't of Just.*, 463 F. Supp. 3d 474, 478 (S.D.N.Y. 2020) ("As a remedy, the parties are required to meet and confer on agreed-upon search terms for DOJ to use in conducting a further search that is reasonably calculated to discover the requested documents.").

Parts Authority's designated 30(b)(6) witness explicitly testified that searches can be run on G Suite, the platform on which Parts Authority maintains its emails and other electronic

---

[6] Plaintiffs have already proposed individual custodians for searches of hard drives, but, as the G Suite is a unitary database, there is simply no need to search the G Suite by custodian.

documents, in its entirely, without having to be done on a custodian-by-custodian basis. *See* Exhibit 11, Excerpts from the Transcript of the Deposition of Steven Spritzer, 38:13-20 ("Q: Is it possible to search all Parts Authority simultaneously through e-mail or does Parts Authority have to go custodian by custodian? A: It is possible to search all mailboxes. Q: Is that something Parts Authority has done in the past? A: Yes."). Furthermore, Parts Authority has already run company-wide searches of its email accounts, without being limited to designated custodians, to provide the hit-count for Plaintiffs' initial proposed search terms. Thus, a company-wide email search is not only feasible, it is an approach that Parts Authority has already undertaken as part of the discovery process in this case. *See* Exhibit 12, Email from Alex Fantauzzo with Parts Authority's Search Term Yield Results. Indeed, G Suite includes a program called Google Vault -- which Parts Authority's 30(b)(6) witness testified that Parts Authority uses (Exhibit 11, 135:6-10) -- that allows for searching of all G Suite documents without the need to designate individual custodians. *See* Exhibit 13, Declaration of Alvin J. Flowers. With such tools at its disposal, and a demonstrated history of being able to conduct company-wide searches, there is no need to designate custodians for these searches.

Parts Authority has failed to articulate any significant burden associated with searching the entire G Suite database of emails and documents. More importantly, Parts Authority's designated 30(b)(6) witness could not articulate any burden with searching Parts Authority's G Suite, aside from an occasional search crash, which is easily remedied by simply attempting the search again. *See* Exhibit 11, 32:18-25 ("Q: Is there any burden to IT for running searches all across the Google Drive? A: Yes. Q: What is the burden? A: Time and effort and the scope of the search, depending on what criteria we are searching for, can actually crash the search causing us to start over from scratch."); 34:1-8 ("We have never refused to perform a search. We would perform the search and if the search proved burdensome and crashed . . . it was not feasible to rerun it. Q: Do you recall the last time a search proved to be not feasible? A: Not specifically.").

And the occasional crash is rare, given that Parts Authority's designated and extremely unprepared[7] 30(b)(6) witness only had knowledge of the searches which had crashed and no knowledge of the searches which had run successfully upon Parts Authority's first attempt. *See* Exhibit 11, 55:20-25 ("Q: So you have been aware of some broad searches that crashed the system, but you haven't done any looking into the searches that did not crash the system? . . . A: Personally, no."); 56:1-5 ("Q: How many searches for this information have crashed the system? . . . A: I cannot speak to how many. I do not know."); 56:9-15 ("Q: Well, it was brought to your attention when these searches crashed the system, correct? A: Some of them. Perhaps not all of them. Q: How many times was it brought to your attention? A: To my knowledge, a handful.").

Plaintiffs have been seeking substantive document discovery in this case since 2019. However, the Parties have had great difficulty in conferring about ESI and have been unable to agree on an ESI protocol. Given the Court's Order requiring the Parties to submit discovery disputes today, ECF No. 175, the Court's assistance is necessary. Plaintiffs respectfully request that the Court enter Plaintiffs' proposed ESI Protocol and order Parts Authority to continue to meet

---

[7] Plaintiffs continue to attempt confer over the total lack of preparedness of Parts Authority's designated Rule 30(b)(6) witness. Plaintiffs have repeatedly requested to confer with Counsel for Parts Authority, but Parts Authority has repeatedly delayed the conferrals using frivolous reasons. Plaintiffs may bring this to the Court's attention on a future date.

and confer in good faith using Plaintiffs' proposed search terms (which Plaintiffs are happy to revise as needed through an iterative process) across the G Suite until the parties either agree on search terms or require the Court's further assistance.[8]

We thank the Court for its continued attention to this matter.

Respectfully submitted,

*/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
Andrew C. White
Amanda T. Chan
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
awhite@fbfglaw.com
achan@fbfglaw.com

Mark Potashnick (*Pro Hac Vice*)
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170

*Attorneys for Plaintiffs and the putative classes*

CC:
All counsel of record by ECF

---

[8] Notably, Parts Authority's only articulate burden is a computer crashing and having to re-run the search, an event that has happened only a "handful" of times in the past, out of hundreds of searches.  *See* Exhibit 11, 56:9-15.