

**BY ECF**  October 14, 2021
The Honorable Barbara Moses
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Henao v. Parts Authority, LLC*, No. 19-10720 (S.D.N.Y.)

Dear Judge Moses,

      In accordance with the Court's Order, ECF No. 179, we write on behalf of Plaintiffs in the above-captioned matter to request a pre-motion conference regarding two ripe discovery disputes: (1) the implementation of a protocol for the production of electronically-stored information ("ESI") and (2) Parts Authority's refusal to run proposed search terms across its G Suite platform to provide hit counts and negotiate reasonably narrow and proportionate terms. We apologize for the previous oversight regarding Your Honor's page limitations on letter motions.

### Plaintiffs Have Been Attempting To Obtain Relevant ESI For Well Over A Year.

      Plaintiffs served their initial discovery demands, including interrogatories and requests for production of documents, on December 24, 2019. After a temporary stay on written discovery (*see* ECF Nos. 84, 89) Diligent served responses and objections to Plaintiffs' requests on June 26, 2020, and Parts Authority served responses and objections to Plaintiffs' requests on July 15, 2020.

      From July 6, 2020 through August 11, 2020, the Parties met and conferred over discovery disputes related to Plaintiffs' discovery demands, however during those conferrals, Defendants refused to confer about the production of ESI other than to represent that they would not produce electronic documents apart from those that directly name or reference the named Plaintiffs. The Parties submitted letters concerning ripe discovery disputes to Your Honor in August, 2020, including the issue of ESI. ECF Nos. 104, 109. Following a September 8, 2020 discovery conference, Your Honor issued a discovery Order on specific disputes raised in the Parties' letters. ECF Nos. 110-111. While Diligent provided supplemental discovery responses based on this Order on September 23, 2020, Parts Authority did not do so until December 7, 2020.

      The Parties continued conferring on discovery issues, including ESI, from September 2020 to December 2020. On January 8, 2021, after these conferral efforts failed to make significant headway on resolving the ESI disputes or in clarifying Plaintiffs' understanding of Defendants' ESI systems,[1] Plaintiffs served notices of depositions pursuant to Fed. R. Civ. P. 30(b)(6) on Defendants, seeking qualified witnesses to testify concerning their ESI and computer systems.

      On February 4, 2021, the Parties submitted a status letter advising that the Parties had "not

---

[1] Parts Authority insisted that the top priority in searching ESI in this case was that it not replicate all of the work it had allegedly performed in producing emails in the related arbitrations. Notably, at the time of those conferrals, Parts Authority had produced a total of less than 10 emails (most of which simply mentioned the arbitration claimants' names) in those actions.

yet reached agreement on the scope of discovery concerning electronically stored information ('ESI') or ESI protocols." ECF No. 142. During a February 8, 2021 conference, Your Honor directed the Parties to meet and confer in good faith to resolve any remaining disputes concerning the limited 30(b)(6) depositions on these ESI issues. ECF No. 143. Between February 9, 2021, and April 5, 2021, the Parties conferred by phone and/or email on at least 11 occasions concerning ESI and the 30(b)(6) depositions. On April 21, 2021, the Parties updated the Court that the 30(b)(6) depositions would be conducted the following month. ECF No. 155.

These depositions were held in May, 2021, however Plaintiffs identified numerous deficiencies in both witnesses' preparedness. Throughout July and August 2021, the Parties conferred by letter, email, and phone approximately a dozen more times concerning the depositions and ESI. On August 18, 2021, the Parties submitted a status letter to Your Honor in which they noted that conferrals over ESI protocol and electronic discovery were still ongoing. ECF No. 165.

Meet and confer efforts have continued, as referenced in Plaintiffs' September 30, 2021 letter to Your Honor (ECF No. 174), including, most recently, via a telephone conference on Monday, September 20, 2021 10:00am for approximately one hour, on Wednesday, September 22, 2021 at 11am for approximately one hour, and on Wednesday, October 6, 2021 3:00pm for approximately half an hour. Attorneys David Warner, for Diligent, Sharon Stiller for Parts Authority, and Jeremiah Frei-Pearson, Mark Potashnick, and Amanda Chan for Plaintiffs were all present at these conferrals. Because ESI discovery has not started, to date Defendants have produced approximately 102 pages of documents.

**ESI Protocol**

Plaintiffs and Defendants have drafted competing ESI protocols. *See* Exhibits 1-2. The parties have conferred, and the dispute over which protocol should be entered is ripe for the Court. Plaintiffs' proposed ESI protocol (Exhibit 1) contains necessary provisions regarding search methodology, data integrity, and validation -- especially given that Parts Authority's production of documents and data has been problematic in various related arbitrations.

Pursuant to Your Honor's' Individual Rule 2(b), Plaintiffs first proposed an ESI protocol to Defendants on August 13, 2021. Exhibit 3. On August 27, 2021, Plaintiffs' Counsel requested a time to confer about "Plaintiffs' proposed ESI protocol . . . . Please provide any suggested edits by redline in advance of the conferral. Exhibit 4. We reserve the right to revise the protocol, search terms, and custodians pending disclosure of the information sought during the 30(b)(6) depositions." *Id.*

At the September 20, 2021 conferral, Defendants argued that an ESI protocol was unnecessary. Plaintiffs' Counsel explained that "Plaintiffs need something governing the search of ESI, especially given Defendant's prior experience producing [deficient] discovery documents in related arbitrations. Plaintiffs feel it is very necessary to have an agreed upon document governing the production of discovery." Exhibit 5. Despite claiming that its search terms results in a related arbitration had been de-duplicated (*see* Exhibit 6), at the September 22, 2021 conferral, Parts Authority insisted that the ESI protocol could not contain a de-duplication provision because Parts Authority had no means of de-duplicating its document production without printing out all of its documents. After originally arguing that an ESI protocol was unnecessary, Defendants

provided a competing protocol for the first time on October 5, 2021. At the October 6, 2021 conferral, Plaintiffs' Counsel again explained to Defendants that the provisions of their offered ESI protocol provide clear expectations for discovery for all parties – which is necessary given that Parts Authority's production has been in question in related arbitrations. *See* Exhibit 7; *see also* Exhibit 8, *Pannell v. Parts Authority*, AAA Case No. 01-20-0009-6223, at 4, 7 n.3 ("the Arbitrator finds significant fault with the Employer's records"), 14, 16. These provisions are regularly included and approved by courts. *See Moore v. Publicis Groupe SA*, No. 11-1279, 2012 WL 1446534, at *2 (S.D.N.Y. Apr. 26, 2012) ("[T]he ESI protocol contains standards for measuring the reliability of the process and the protocol builds in levels of participation by Plaintiffs. It provides that the search methods will be carefully crafted and tested for quality assurance, with Plaintiffs participating in their implementation.").

Plaintiffs believe that a validation protocol is particularly important in this matter, as Defendants have engaged in obstructive discovery strategies in the past. For example, in the United States Department of Labor's ("DOL") action against Diligent and Parts Authority for the same misclassification and under-reimbursement scheme in Arizona, the DOL determined that Diligent had been hiding significant documents in the custody of CEO Larry Browne, ultimately resulting in the DOL joining him as a named defendant. *See Sec. of Labor v. Ariz. Logistics, Inc*., No. 16-4499, ECF No. 103 at 3-6 (D. Ariz. Aug. 31, 2018) (recounting "the odyssey that Diligent forced the Secretary to undertake" when seeking relevant documents); *id*. at ECF No. 1-5 (describing how Diligent "wrongly withh[eld] highly relevant documents"). Against that backdrop, in this case and related arbitrations Parts Authority has repeatedly claimed that it has ***no*** emails discussing any of the policies at issue in this and related matters. This assertion is not credible, as Parts Authority witnesses have testified that there are approximately 1,000 drivers who are misclassified as employees at a given time, and it is impossible to believe that a company worth over $500 million would have no emails relating to such a substantial part of its workforce.

Where a party has made "inconsistent representations concerning discovery," rigorous ESI discovery is warranted. *See Hutchins v. Palmer*, 2015 WL 13713335, at *12 (E.D.N.Y. Mar. 31, 2015) ("[T]he Court finds justification for the concerns raised regarding the accuracy and comprehensiveness of Defendants' ESI production. Accordingly, the Court will permit Plaintiffs' counsel to . . . explore in greater detail all of the steps undertaken to preserve ESI[.]"). This is the case here, where Parts Authority has demonstrably made several inconsistent statements.

**Parts Authority's Refusal To Run Proposed Search Terms Across G Suite**

After many preparatory conferrals, Plaintiffs first submitted their proposed search terms to Parts Authority on August 27, 2021. *See* Exhibit 4. Parts Authority refused to inform Plaintiffs of the search results of such terms until October 6, 2021, and only after Plaintiffs were forced to repeatedly request those results. *See* Exhibit 7.

Plaintiffs submitted narrowed search terms (*See* Exhibit 9) on the morning of October 7, 2021 -- less than a day after Plaintiffs had received Parts Authority hit counts. That same day, Counsel for Parts Authority stated that it would not run search terms again "until Plaintiff agrees to limit the search to designated custodians. Running searches over the entire G Suite system is not productive." *See* Exhibit 7. This blanket refusal is inappropriate, as sharing search term yield results is simply part and parcel of regular discovery practices in the Southern District of New

York. *See Jose Luis Pelaez, Inc. v. Scholastic*, *Inc.*, 2018 WL 1891116, at *1 (S.D.N.Y. Apr. 3, 2018) ("The Court . . . directed the parties to continue to meet and confer to try to reach an agreement regarding custodians and search terms."); *Precision Med. Grp., LLC v. Blue Matter, LLC*, 2020 WL 7352509, at *3 (S.D.N.Y. Dec. 15, 2020) (describing back-and-forth exchange of proposed search terms, hit-counts, and counter-proposals and ordering use of specified terms).

Parts Authority's designated 30(b)(6) witness explicitly testified that searches can be run on G Suite, the platform where Parts Authority maintains its emails and other ESI, in its entirety. *See* Exhibit 10 at 38:13-20 ("Q: Is it possible to search all Parts Authority simultaneously through e-mail or does Parts Authority have to go custodian by custodian? A: It is possible to search all mailboxes. Q: Is that something Parts Authority has done in the past? A: Yes."). The G Suite is one custodian. *See* Exhibit 11, Declaration of Alvin J. Flowers. With this demonstrated history of being able to conduct company-wide searches, there is no need to designate individual custodians beyond the G Suite.[2]

Parts Authority has failed to articulate any significant burden associated with searching the entire G Suite database of emails and documents. More importantly, Parts Authority's designated 30(b)(6) witness could not articulate any burden with searching Parts Authority's G Suite, aside from an occasional search crash, which is easily remedied by simply attempting the search again. *See* Exhibit 10, 32:18-25 ("Q: Is there any burden to IT for running searches all across the Google Drive? A: Yes. Q: What is the burden? A: Time and effort and the scope of the search, depending on what criteria we are searching for, can actually crash the search causing us to start over from scratch."); 34:1-8 ("We have never refused to perform a search. We would perform the search and if the search proved burdensome and crashed . . . it was not feasible to rerun it. Q: Do you recall the last time a search proved to be not feasible? A: Not specifically.").[3]

Plaintiffs have been seeking substantive document discovery in this case since late 2019. However, the Parties have had great difficulty in conferring about ESI and have been unable to agree on an ESI protocol, necessitating the Court's assistance. Plaintiffs respectfully request that the Court enter Plaintiffs' proposed ESI protocol (Exhibit 1) and order Parts Authority to continue to meet and confer in good faith using Plaintiffs' proposed search terms (which Plaintiffs are happy to revise as needed through an iterative process) across the G Suite until the parties either agree on search terms or require the Court's further assistance.

We thank the Court for its continued attention to this matter.

---

[2] Parts Authority argues that Plaintiffs seek discovery from more than 10 custodians. Not so. The G Suite is a unitary custodian. Parts Authority's assertion that it may take over 160 hours to search for the ESI is contrary to testimony from the 30(b)(6) depositions and not credible.

[3] The occasional crash is rare, given that Parts Authority's designated 30(b)(6) witness only knew searches had crashed a "handful" of times. *See* Exhibit 10, 55:20-25, 56:9-15.

5

Respectfully submitted,

*/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
Andrew C. White
Amanda T. Chan
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
awhite@fbfglaw.com
achan@fbfglaw.com

Mark Potashnick (*Pro Hac Vice*)
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170

*Attorneys for Plaintiffs and the putative classes*

CC:
All counsel of record by ECF