# EXHIBIT 7

# Amanda Chan

| | |
|---|---|
| **From:** | Amanda Chan |
| **Sent:** | Thursday, October 7, 2021 6:26 PM |
| **To:** | Alexander Fantauzzo; Sharon Stiller; Jeremiah Frei-Pearson; David Warner |
| **Cc:** | Mark Potashnick; Andrew White; Andrew Marks |
| **Subject:** | RE: Today's meet and confer |

Alex,

Thank you for your email. You have not identified a concrete burden with searching the G-Suite. Parts Authority has searched the G-Suite previously in related arbitrations. Please have your client do so again using the narrowed, revised search terms that I provided this morning.

Respectfully,

## Amanda Chan
*Associate Attorney*
Direct No/Fax: (914) 824-1560 (ext. 41560)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, NY 10601

**From:** Alexander Fantauzzo <AFantauzzo@Abramslaw.com>
**Sent:** Thursday, October 7, 2021 4:12 PM
**To:** Amanda Chan <AChan@FBFGLaw.com>; Sharon Stiller <SStiller@Abramslaw.com>; Jeremiah Frei-Pearson <jfrei-pearson@FBFGLaw.com>; David Warner <dwarner@dorflaw.com>
**Cc:** Mark Potashnick <markp@wp-attorneys.com>; Andrew White <awhite@fbfglaw.com>; Andrew Marks <amarks@dorflaw.com>
**Subject:** RE: Today's meet and confer

Amanda:

Our recollections certainly don't match yours, but I don't think endlessly going back and forth over who said what is a good use of anyone's time – let's move on.

We appreciate you providing revised search terms this morning. We'll review those as soon as possible, but as Sharon stated yesterday, we don't intend to run additional search terms until Plaintiff agrees to limit the search to designated custodians. Running searches over the entire G-Suite system is not productive.

We look forward to resuming our conferral in the near future.

Thank you,
Alex Fantauzzo

1

## Alexander Fantauzzo, Esq.

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

| Associate | | | | Rochester Office |
| Tel: 585-218-9999 | | | | 160 Linden Oaks |
| Fax: 585-218-0562 | | | | Suite E |
| Email: afantauzzo@abramslaw.com | | | | Rochester, New York 14625 |

| Long Island | Manhattan | Brooklyn | Rochester | White Plains |
| (516) 328-2300 | (212) 279-9200 | (718) 215-5300 | (585) 218-9999 | (914) 607-7010 |

**WWW.ABRAMSLAW.COM**

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Amanda Chan <AChan@FBFGLaw.com>
**Sent:** Thursday, October 7, 2021 2:30 PM
**To:** Sharon Stiller <SStiller@Abramslaw.com>; Jeremiah Frei-Pearson <jfrei-pearson@FBFGLaw.com>; David Warner <dwarner@dorflaw.com>
**Cc:** Mark Potashnick <markp@wp-attorneys.com>; Andrew White <awhite@fbfglaw.com>; Alexander Fantauzzo <AFantauzzo@Abramslaw.com>; Andrew Marks <amarks@dorflaw.com>
**Subject:** RE: Today's meet and confer

**Caution: This email originated outside of the organization**

Sharon,

Apologies, but I believe you are mistaken. I take notes of our conferrals near-verbatim (when possible) and this is what my notes say.

Jeremiah stated, "Obviously, we have a strong disagreement about search terms." In response, Sharon stated, "My suggestion is that instead of going through all of them, you can kind of stop and just think about what your search terms are."

As you can see from the conversation above, you did not initially tell us the "results of the search." In actuality, you made generalized statements about the search terms, waited until near the end of our conferral to instruct your associate to send us the search terms yield, and now misstate the substance of our conversation.

Later, Jeremiah stated, "We will propose more narrow search terms; I understand that makes things a little tight. I think we have a dispute. We have been around on search terms and custodians and it is what it is."

2

Sharon responded, "I'm willing to consider other search terms. What I heard from last time we spoke is that you wanted us to engage in what I thought was a ridiculous mission of looking at the numbers that come back across the full G-Suite. And those numbers came back and many of the search terms returned 300,000 results or more."

Jeremiah asked, "Wait. Did you run our search terms?"

Jeremiah then requested that you share the results of the search, and you did not do so until 3:25, which was 5 minutes before the end of our conferral.

Again, please run the narrowed search terms and promptly report the results so that we can continue to move this process forward.

Respectfully,

**Amanda Chan**
*Associate Attorney*
Direct No/Fax: (914) 824-1560 (ext. 41560)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, NY 10601

**From:** Sharon Stiller <SStiller@Abramslaw.com>
**Sent:** Thursday, October 7, 2021 12:53 PM
**To:** Amanda Chan <AChan@FBFGLaw.com>; Jeremiah Frei-Pearson <jfrei-pearson@FBFGLaw.com>; David Warner <dwarner@dorflaw.com>
**Cc:** Mark Potashnick <markp@wp-attorneys.com>; Andrew White <awhite@fbfglaw.com>; Alexander Fantauzzo <AFantauzzo@Abramslaw.com>; Andrew Marks <amarks@dorflaw.com>
**Subject:** RE: Today's meet and confer

Amanda, as you know, both David and I are otherwise occupies today in a deposition which began at 20 am and I do not have the opportunity to correct the inaccuracies contained herein. At the beginning of the "meet and confer" I told you of the results of the search we had conducted of all boxes at your instance. As I noted in our "meet and confers" and in my emails, as a result of the breadth of the search terms, you had asked us to go on a wild goose chase. Please do not use terms like "finally acquiesced" when the reality is that I asked that we devote our time to discussing the issues, rather than me sending you a document when I had told you the results. Instead of wasting our time to meet your request, I had to take time to ask an associate to do it, again at your instance. While you should know what a wildcat is and the impact of using them when you form your requests, and while I had advised you of what I anticipated the result would be (and the result has been in other cases with too broad terms) I also provided you with additional information. I am still unclear about what your team finds objectionable in our proposed ESI plan except that it does not contain all the language that was in yours. Please advise so that we can have a meaningful discussion. If I have the opportunity to review your email further and if additional information is warranted, I will consider that.

Sharon

*Sharon Stiller, Esq.*

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

**Partner**
Tel: (585) 218-9999
Fax: (585) 218-0562
Email: SStiller@Abramslaw.com

**Rochester Office**
160 Linden Oaks
Suite E
Rochester, New York 14625

| Long Island | Manhattan | Brooklyn | Rochester | White Plains |
|---|---|---|---|---|
| (516) 328-2300 | (212) 279-9200 | (718) 215-5300 | (585) 218-9999 | (914) 607-7010 |

WWW.ABRAMSLAW.COM






CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Amanda Chan <AChan@FBFGLaw.com>
**Sent:** Thursday, October 7, 2021 10:58 AM
**To:** Sharon Stiller <SStiller@Abramslaw.com>; Jeremiah Frei-Pearson <jfrei-pearson@FBFGLaw.com>; David Warner <dwarner@dorflaw.com>
**Cc:** Mark Potashnick <markp@wp-attorneys.com>; Andrew White <awhite@fbfglaw.com>; Alexander Fantauzzo <AFantauzzo@Abramslaw.com>; Andrew Marks <amarks@dorflaw.com>
**Subject:** RE: Today's meet and confer

**Caution: This email originated outside of the organization**

Sharon and David,

Thank you David and Sharon for conferring with me and Jeremiah yesterday.

During yesterday's conferral Plaintiffs learned, for the first time, that Parts Authority ran the search terms Plaintiffs previously proposed. It was unfortunate that Parts Authority did not share the search term results before our conferral and that, when Jeremiah requested that Parts Authority share the results, instead we had long argument before the results were finally shared 25 minutes into today's our half-hour conferral. In the future, please share search term results in ahead of our conferrals so that we can be more efficient.

4

When Sharon finally acquiesced, and Jeremiah was able to look at the search term results, Jeremiah immediately agreed that some of the searches were too broad and agreed to confer with my colleagues to narrow. To that end, attached please find Plaintiffs' Second Set of Proposed Search Terms for Parts Authority  Please run those search terms and provide the results so that we can continue to work to find agreement on search terms.

In addition, attached please find Plaintiffs' second set of search term results for Diligent. David, please let us know the results of these search terms.

During the conferral, Jeremiah asked what the Wildcards were. Jeremiah and I were not able to understand Sharon's explanation, which included statements like "temp can also capture terms like temperature." Jeremiah requested a written explanation, and we appreciate Sharon providing it. After reviewing Sharon's explanation, we have two questions. First, it should not be the case that "temp" captures terms like "temperature." Can you confirm that non-extended words aren't capturing extended words? If no, that is an issue that needs to be addressed.

Second, we believe the wildcard issue can be addressed by inverting the search terms when it appears. For instance, with regard search terms containing "supervis!" and "diligentusa.com", I understand that there are many variations of "supervis!" And some mailboxes may have too many hits; however, if Diligentusa.com is run first, and then "supervis!" Is run second, the problem should address. Sharon – where a wildcard yields too many hits, can you agree to run the non-wildcard term first and then report if there are still too many hits?

During today's conferral, we also discussed the competing ESI Protocol drafts. Jeremiah stated that, because the protocols were so different, it appeared that we had a ripe dispute. However, we conferred further. Jeremiah asked why Parts Authority deleted so many clauses from Plaintiffs' Proposed ESI protocol. David explained that our protocol was overly complex and not tailored to this case. Jeremiah respectfully disagreed, as the protocol was written to address problems that we have had with Parts Authority's discovery conduct in related arbitrations. To the extent that Defendants find Plaintiffs' proposed ESI protocol "dense" or "generic" as David claimed today, we respectfully disagree.

For example, Defendants object to the "Data Integrity" provision of Plaintiffs' proposed ESI protocol. David and Sharon both fail to articulate any particular reason as to why the parties should not be held to a data integrity provision – especially where the integrity of Parts Authority's data has been at issue in various previous arbitrations – with Arbitrator Weinstock recently holding that the data Parts Authority produced was incomplete.

Further, there is simply no burden to the promise of producing data with integrity, assuming that all parties were planning on doing so regardless. It is with the Data Integrity provision that all parties are on equal terms and understand the expectations of discovery. Despite our three conferrals, we have yet to hear a single specific reason as to why a provision such as this is objectionable. Instead, Defendants only state that it's too general and not specific. On the contrary, the Data Integrity provision is especially

5

specific and necessary for the parties here, where Parts Authority has a history of questionable production of data and documents.

The likewise is true for the "Search Methodology" and "Validation Protocol" provisions. These clauses are especially applicable to the instant case of *Henao v. Parts Authority* – because Parts Authority's disclosure of documents and process of search methodology has been at issue in the past. Plaintiffs' proposed ESI Protocol furthers the interest of efficiency. When all the parties are on the same page and understand all of the expectations, our discovery will be much more efficient, speedy, and transparent. Plaintiffs' proposed ESI Protocol will prevent future discovery disputes.

Since we only had 30 minutes today, Jeremiah neglected to mention also during our conferral that your proposed ESI Protocol also fails to list all of the custodians on Diligent's Independent Contractor Resources team that you already disclosed to us. Assuming this omission was inadvertent, please confirm that you still intend to include Alina Hicks, Gina Myers, and Denise Gomez as custodians. Please also tell us who the other ICR custodians are, so we can evaluate whether they should be included.

We look forward to seeing you later today at the deposition of Shawn Williams. If schedules allow, let's confer after the deposition.

Respectfully,


**Amanda Chan**
*Associate Attorney*
Direct No/Fax: (914) 824-1560 (ext. 41560)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, NY 10601


**From:** Sharon Stiller <SStiller@Abramslaw.com>
**Sent:** Wednesday, October 6, 2021 5:44 PM
**To:** Jeremiah Frei-Pearson <jfrei-pearson@FBFGLaw.com>; David Warner <dwarner@dorflaw.com>
**Cc:** Mark Potashnick <markp@wp-attorneys.com>; Andrew White <awhite@fbfglaw.com>; Amanda Chan <AChan@FBFGLaw.com>; Alexander Fantauzzo <AFantauzzo@Abramslaw.com>; Andrew Marks <amarks@dorflaw.com>
**Subject:** Today's meet and confer

Jeremiah,

During our meet and confer today you asked for more information concerning the meaning of "wildcards", and what was meant by the notation that in many of your proposed searches, there were too many "wildcard matches" to conduct a search. We have discussed similar issues concerning the necessity for targeted searches (both in the

definition of the search as well as custodians) to obtain results, both in our meet and confers as well as in ESI discussions in other cases we have both handled ( for example, see the discussion that we had in Santiago, below).   While I defined wildcards and the issues they create for you in our discussions as did David, here is an attempt to simplify the concept in writing.

The dictionary definition of a "wildcard" in this context is a symbol used to represent unspecified characters.  You designated an asterisk as a wildcard for most of your searches.   As noted, the Google vault cannot return search results when a wildcard search operator matches 100 or more words in a user's account.  For example, the search term "foo*" could produce too many results because it could be "food," "foot," "football" etc.  As we expressed, there are too many variations in the results to permit a search for the majority of your proposed search terms.  That is why we suggested using only "diligentusa" or "diligent" following the search term, once we agree upon the relevant limited custodian base.

Let me know if you have any additional questions about this.  This is precisely why I suggested limiting the searches before we engaged in a wild goose chase over the entire data base, as you required during our prior discussions.   The "wild goose chase" produced the same result with the same issues that we had experienced before.

I have reproduced, as an example below, part of the discussion we had in the Santiago matter during ESI discovery about too many hits and the necessity to eliminate the wildcards in order to obtain any results.  As I noted in our earlier "meet and confers", we don't need to reinvent the wheel, having had the same experiences before.  We do need your cooperation in narrowing the search terms and the custodians.

Sharon

*Sharon Stiller, Esq.*

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

| **Partner** | | **Rochester Office** |
|---|---|---|
| Tel: (585) 218-9999 | | 160 Linden Oaks |
| Fax: (585) 218-0562 | | Suite E |
| Email: SStiller@Abramslaw.com | | Rochester, New York 14625 |

| Long Island | Manhattan | Brooklyn | Rochester | White Plains |
|---|---|---|---|---|
| (516) 328-2300 | (212) 279-9200 | (718) 215-5300 | (585) 218-9999 | (914) 607-7010 |

WWW.ABRAMSLAW.COM

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Sharon Stiller <SStiller@Abramslaw.com>
**Sent:** Thursday, September 17, 2020 1:17 PM
**To:** Andrew White <awhite@fbfglaw.com>; David S. Warner <dwarner@dorflaw.com>; Andrew Marks <amarks@dorflaw.com>
**Cc:** Jeremiah Frei-Pearson <jfrei-pearson@FBFGLaw.com>; markp@wp-attorneys.com; Scott Terrell <sterrell@fbfglaw.com>
**Subject:** RE: Santiago v Parts Authority

Confirming that we have a call set up for tomorrow at 11 on this; has anyone sent around a conference call number? I did not see one.

We thought it would be helpful to provide the background of some of the Parts Authority searches so that we can devote our time tomorrow to coming up with a realistic solution going forward. Your proposed search terms required at least 90 separate searches. The following is a brief synopsis of the numerous searches that Parts Authority conducted in the Santiago matter:

- Initially, searches were run for "Angel Santiago", "Angel", "Santiago" and for the Diligent manager.
- With respect to your proposed search terms, searches were run for the entire company as well as in the daily backups of the users email and Driver data.
- Using your search terms as drafted there were in excess of a million hits, and more than a thousand accounts that couldn't be too searched because they produced too many results. IT advised that part of the issue could be the wildcards included in the search terms and the use of "OR" and other conjunctions, because each of the "search terms" were actually multiple searches.
- As a result, PA removed wildcards, but the results were still enormous. In addition, they cannot remove duplicates until after the emails or documents are downloaded, so it is impossible to tell the end result of the potential document population.
  PA then re- searched terms 1-11 in the accounts of managers, dispatchers, and individuals that would have had a role in the relationship between PA and Diligent, per arbitrator Drucker's order. We have previously provided the names of those individuals. These results are more manageable (although some have yielded potential document populations of close to 3000 documents, some may turn out to be duplicates.) PA is in the process of reviewing those documents.

We can discuss tomorrow whether there is any further way to reduce the numbers and a method to prevent reinventing the wheel in each of the arbitrations (for example, we have searched emails of Yaron, Rich McMullen etc… and there is no reason to do so in other arbitrations). Look forward to speaking tomorrow.

Sharon

This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.